JOHN C. CRUDEN
Assistant Attorney General
Andrew J. Doyle (FL Bar No. 84948)
John Thomas H. Do (CA Bar No. 285075)
Samara M. Spence (TN Bar No. 031484)
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC  20044

PHILIP A. TALBERT
Acting United States Attorney
Gregory T. Broderick (CA Bar No. 220871)
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814

*Attorneys for the United States*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ROGER J. LAPANT, JR.; J&J FARMS; GOOSE POND AG, INC.; and FARMLAND MANAGEMENT SERVICES, | |
| Defendants. | |

The United States of America ("United States"), through its

undersigned attorneys, by the authority of the Attorney General,

and at the request of the Secretary of the Army acting through

the United States Army Corps of Engineers ("Corps"), alleges as

follows:

Complaint                              1

**NATURE OF THE ACTION**

1.    This is a civil enforcement action commenced under sections 309 and 404 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319 and 1344, against four persons (an individual and three corporations) for discharging pollutants into waters of the United States in Tehama County, California without authorization, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

2.    The United States seeks: (a) injunctive relief prohibiting these persons from further unauthorized discharges; (b) injunctive relief compelling these persons to restore and mitigate the impacts of the unauthorized discharges; (c) civil penalties in favor of the United States and against these persons; and (d) such other relief as the Court may deem appropriate.

3.    The United States has provided notice of the commencement of this action to the State of California pursuant to 33 U.S.C. § 1319(b).

**JURISDICTION AND VENUE**

4.    This Court has jurisdiction over the subject matter of this action pursuant to section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331 and 1345.

5.    Venue is proper in the United States District Court for the Eastern District of California pursuant to 33 U.S.C. § 1319(b) and 28 U.S.C. § 1391(b) and (c) because these four persons reside or conduct business in this District; the waters of the United States into which pollutants were discharged are located in this District; and the events giving rise to these claims occurred in this District.

**PARTIES**

6.   Plaintiff is the United States of America, and authority to bring this action is vested in the United States Department of Justice pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

7.   Defendants are Roger J. LaPant, Jr.; J&J Farms; Goose Pond Ag, Inc.; and Farmland Management Services.

8.   Roger J. LaPant, Jr. is an individual residing at 147 Shippee Road, Oroville, California 95965, or 9032 Goodspeed St., Durham, CA 95938.

9.   Upon information and belief, J&J Farms is a privately held company, incorporated in the State of California, with a business address of 147 Shippee Road, Oroville, California 95965, or 9032 Goodspeed St., Durham, CA 95938.

10.  Roger J. LaPant, Jr. owns, controls, or occasionally does business as J&J Farms.

11.  Goose Pond Ag, Inc. is a corporation registered in the State of Florida with a principal place of business at 99 High Street, 26th Floor, Boston, MA 02110.

12.  Farmland Management Services is a corporation registered in the State of California with a business address of 301 East Main Street, Turlock, CA 95380.

13.  Defendants at this time do not include other persons such as Todd LaPant, LaPant Farms LLC, Carl Evers, Jr., David Evers, Oliver Williams, Hancock Agricultural Investment Group, and Hancock Farmland Services, but the United States may seek to amend this complaint as appropriate based on information obtained during discovery regarding other persons' involvement with or

1  responsibility for the CWA violations alleged in this complaint.

2  **STATUTORY AND REGULATORY BACKGROUND**

3  14.  Section 101(a) of the CWA, 33 U.S.C. § 1251(a),

4  provides that "[t]he objective of this chapter is to restore and

5  maintain the chemical, physical, and biological integrity of the

6  Nation's waters."

7  15.  Section 301(a) of the CWA, 33 U.S.C. § 1311(a),

8  prohibits the "discharge of any pollutant by any person" except,

9  *inter alia*, in compliance with a permit issued by the Corps

10  pursuant to section 404 of the CWA, 33 U.S.C. § 1344.

11  16.  Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines

12  "person" to include, *inter alia*, an "individual" and a

13  "corporation."

14  17.  Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines

15  "pollutant" to include, *inter alia*, "dredged spoil," "biological

16  materials," "rock," "sand," and "cellar dirt."

17  18.  Section 502(12) of the CWA, 33 U.S.C. § 1362(12),

18  defines "discharge of a pollutant" as "any addition of any

19  pollutant to navigable waters from any point source."

20  19.  Section 502(14) of the CWA, 33 U.S.C. § 1362(14),

21  defines "point source" to include "any discernible, confined and

22  discrete conveyance . . . from which pollutants are or may be

23  discharged."

24  20.  Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines

25  "navigable waters" as "the waters of the United States, including

26  the territorial seas."

27  21.  33 C.F.R. § 328.3(a)(1), (5) and (7), at all times

28  relevant to the CWA violations alleged in this complaint, define

Complaint                                                      4

"waters of the United States" to include, *inter alia*:  all waters
that are currently used, were used in the past, or may be
susceptible for use in interstate or foreign commerce
("traditional navigable waters"); tributaries of traditional
navigable waters; and wetlands adjacent to traditional navigable
waters or their tributaries.[1]

22.  33 C.F.R. § 328.3(b) defines "wetlands" as "those areas
that are inundated or saturated by surface or ground water at a
frequency and duration sufficient to support, and that under
normal circumstances do support, a prevalence of vegetation
typically adapted for life in saturated soil conditions."

23.  33 C.F.R. § 328.3(c), at all times relevant to the CWA
violations alleged in this complaint, defines "adjacent" as
"bordering, contiguous, or neighboring."  It further provides:
"Wetlands separated from other waters of the United States by
man-made dikes or barriers, natural river berms, beach dunes and
the like are 'adjacent wetlands.'"[2]

24.  Section 309(b) of the CWA, 33 U.S.C. § 1319(b),
authorizes the commencement of a civil action for appropriate
relief, including a permanent injunction, against any person who,
*inter alia*, violates 33 U.S.C. § 1311(a) by discharging dredged
or fill material without obtaining and complying with a permit
issued by the Corps pursuant to 33 U.S.C. § 1344.

---

[1] This regulation has since been amended by the "Clean Water
Rule," 80 Fed. Reg. 37,054 (June 29, 2015), but the activities in
question occurred before the effective date of the Clean Water
Rule.  The Clean Water Rule has been stayed pending resolution of
claims that it is arbitrary, capricious, and contrary to law.
*See In re EPA*, 803 F.3d 804 (6th Cir. 2015).
[2] *See supra* n.1.

25.  33 U.S.C. § 1319(d) provides that any person who violates 33 U.S.C. § 1311(a) shall be subject to a civil penalty not to exceed $25,000 per day for each violation.

26.  Effective after January 12, 2009, 40 C.F.R. § 19.4 adjusts the $25,000 amount provided in 33 U.S.C. § 1319(d) to $37,500.

27.  Each day that dredged or fill material remains in the place where it was discharged without authorization constitutes an additional and continuing violation of 33 U.S.C. § 1311(a).

28.  Unauthorized discharges into waters of the United States do not eliminate CWA regulatory jurisdiction, even if such unauthorized discharges have the effect of destroying waters of the United States.

29.  Liability for violating 33 U.S.C. § 1311(a) is strict, joint, and several.

**GENERALLY APPLICABLE ALLEGATIONS**

**Location of the CWA Violations**

30.  The CWA violations alleged in this complaint occurred on real property in rural Tehama County, California, just south of the city of Red Bluff and due west of Interstate 5.

31.  This real property is approximately 1,505 acres.

32.  This real property is generally bounded on the north by Ohm Road (which may also be known as Rawson Avenue), on the south by the main stem of Coyote Creek (discussed *infra*), on the west by Paskenta Road, and on the east by Rawson Road.

33.  Tehama County records indicate that this real property includes Tehama County parcels with Assessor Parcel Numbers ("APN") 037-020-01, -03, -04, -023, -024, -025, and -026.

34.   For shorthand purposes, this complaint refers to the real property referenced in paragraphs 30-33 above as "the Site."

35.   On or about March 22, 2011, Defendant Roger J. LaPant, Jr. acquired ownership of the Site (as well as additional real property comprising approximately 450 acres immediately to the south of the main stem of Coyote Creek).

36.   During Defendant Roger J. LaPant, Jr.'s ownership of the Site, he and/or Defendant J&J Farms contracted and corresponded with at least one environmental consultant, NorthStar Environmental, regarding the Site and its aquatic features.

37.   On or about March 23, 2012, Duarte Nursery, Inc. acquired ownership of the Site (as well as additional real property comprising approximately 450 acres immediately to the south of the main stem of Coyote Creek).

38.   On or about October 29, 2012, Defendant Goose Pond Ag, Inc. acquired ownership of the Site (without acquiring ownership of the 450 acres immediately to the south of the main stem of Coyote Creek; Duarte Nursery, Inc. continues to own that real property).

39.   Defendant Farmland Management Services is the land manager for Defendant Goose Pond Ag, Inc.

**The Sacramento River, Coyote Creek, and Oat Creek**

40.   From its headwaters in the Klamath Mountains, the Sacramento River flows generally south for approximately 445 miles before it reaches the Sacramento-San Joaquin River Delta, San Francisco Bay, and the Pacific Ocean.

41.   The Sacramento River is the longest river in

1  California.

2      42.   The Sacramento River's watershed is approximately

3  27,500 square miles.

4      43.   The Sacramento River is currently used for interstate

5  commerce.

6      44.   The Sacramento River was used in the past for

7  interstate commerce.

8      45.   The Sacramento River is susceptible for use in

9  interstate commerce.

10     46.   The Sacramento River is navigable in fact from, at

11  least, Tehama County to and including the Pacific Ocean.

12     47.   Among the biota that depend on the Sacramento River are

13  "anadromous" salmon, steelhead, and other fish that are hatched

14  in freshwater, spend most of their life in oceanic waters, and

15  return to freshwater to spawn.

16     48.   Anadromous fish also depend on streams that contribute

17  flow to the Sacramento River.

18     49.   One such stream is Coyote Creek, the main stem of which

19  forms the southern boundary of the Site.

20     50.   Coyote Creek carries water.

21     51.   Coyote Creek has a bed and bank.

22     52.   Coyote Creek originates generally west of the Site.

23     53.   The direction of the flow of water in Coyote Creek is

24  generally from west to east.

25     54.   Coyote Creek's watershed, or the area from which it

26  receives water, exceeds 16,000 acres.

27     55.   Downstream (east) of the Site, Coyote Creek joins Oat

28  Creek.

1    56.   Oat Creek carries water.

2    57.   Oat Creek has a bed and bank.

3    58.   The direction of the flow of water in Oat Creek is

4    generally from west to east.

5    59.   Oat Creek's watershed, at its junction with Coyote

6    Creek, exceeds 22,000 acres.

7    60.   Downstream (east) of Coyote Creek's confluence with Oat

8    Creek, Oat Creek joins the Sacramento River.

9    61.   Coyote Creek and Oat Creek contribute flow to the

10   Sacramento River.

11   62.   The Sacramento River, Coyote Creek, and Oat Creek are

12   critical habitat for, *inter alia*, two threatened species:

13   Central Valley Spring Run Chinook Salmon (*Oncorhynchus*

14   *tshawytscha*) and Central Valley Steelhead (*Oncorhynchus mykiss*).

15   50 C.F.R. § 223.102(c)(4) and (17); *id.* § 226.211(k) and (*l*).

16   The Endangered Species Act ("ESA") defines "critical habitat" for

17   a threatened or endangered species, in pertinent part, as "the

18   specific areas within the geographical area occupied by the

19   species, at the time it is listed in accordance with the

20   provisions of section 1533 of this title, on which are found

21   those physical or biological features (I) essential to the

22   conservation of the species and (II) which may require special

23   management considerations or protections"; and "specific areas

24   outside the geographical area occupied by the species at the time

25   it is listed in accordance with the provisions of section 1533 of

26   this title, upon a determination by the Secretary that such areas

27   are essential for the conservation of the species."  16 U.S.C.

28   § 1532(5)(A)(i), (ii).  The ESA defines "endangered species" in

Complaint                              9

pertinent part as "any species which is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6).  The ESA defines "threatened species" as "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).  The ESA defines "species" to include "subspecies" and certain "distinct population segment[s]." *Id.* § 1532(16).

63.  Central Valley Spring Run Chinook Salmon and Central Valley Steelhead are anadromous fish.

64.  Critical habitat for Central Valley Spring Run Chinook Salmon extends upstream (west) from the confluence of Oat Creek with the Sacramento River to the following location in Coyote Creek:  Latitude 40.0929°, Longitude -122.1621°.  50 C.F.R. § 226.211(k)(1)(ii).

65.  Critical habitat for Central Valley Steelhead extends upstream (west) from the confluence of Oat Creek with the Sacramento River to the following location in Oat Creek: Latitude 40.0769°, Longitude -122.2168°.  50 C.F.R. § 226.211(*l*)(1)(ii).

66.  The Site is upstream (west) of critical habitat for Central Valley Spring Run Chinook Salmon and Central Valley Steelhead.

67.  Alteration in the timing and volume of water flows and sediment transport delivered from the Coyote Creek ecosystem to Oat Creek and then to the Sacramento River will alter conditions in the Sacramento River for maintaining water quality and navigation.

68.   Alteration in the timing and volume of water flows and sediment transport delivered from the Coyote Creek ecosystem to Oat Creek and then to the Sacramento River will alter conditions in the Sacramento River for maintaining suitable habitat for support of several classes of aquatic faunal species such as macroinvertibrate communities (food webs for fish) and adult and juvenile fishes.

69.   Exhibit 1 to this complaint is a map that fairly and accurately depicts the flow path from the main stem of Coyote Creek at the Site to the Sacramento River.

**Branches of Coyote Creek**

70.   In addition to being bordered by the main stem of Coyote Creek, the interior of the Site contains -- or contained prior to the CWA violations alleged in this complaint -- streams.

71.   These streams carry -- or carried prior to the CWA violations alleged in this complaint -- water.

72.   These streams have -- or had prior to the CWA violations alleged in this complaint -- beds and banks.

73.   The direction of the flow of water in these streams is -- or was prior to the CWA violations alleged in this complaint -- generally from west to east, north to south, or northwest to southeast.

74.   These streams contribute -- or contributed prior to the CWA violations alleged in this complaint -- flow to the main stem of Coyote Creek.

75.   These streams function -- or functioned prior to the CWA violations alleged in this complaint -- as branches of Coyote Creek.

Complaint                                    11

**Adjacent Wetlands**

76.  In addition to streams, the interior of the Site contains -- or contained prior to the CWA violations alleged in this complaint -- other aquatic features.

77.  These aquatic features include -- or included prior to the CWA violations alleged in this complaint -- vernal pools and swales.

78.  These aquatic features are -- or were prior to the CWA violations alleged in this complaint -- inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and under normal circumstances did support, a prevalence of vegetation typically adapted for life in saturated soil conditions.

79.  These aquatic features are -- or were prior to the CWA violations alleged in this complaint -- "wetlands" within the meaning of 33 C.F.R. § 328.3(a)(7), (b).

80.  Wetlands at the Site provide -- or provided prior to the CWA violations alleged in this complaint -- suitable habitat for, *inter alia*, vernal pool fairy shrimp (*Branchinecta lynchi*), a threatened species, and vernal pool tadpole shrimp (*Lepidurus packardi*), an endangered species.  50 C.F.R. § 17.11(h); *Endangered and Threatened Wildlife and Plants; Determination of Endangered Status for the Conservancy Fairy Shrimp, Longhorn Fairy Shrimp, and Vernal Pool Tadpole Shrimp; and Threatened Status for the Vernal Pool Fairy Shrimp*, 59 Fed. Reg. 48,136 (Sept. 19, 1994).

81.  Since at least 2006, wetlands at the Site have been designated critical habitat for vernal pool fairy shrimp.  50

1   C.F.R. § 17.95(h)(13); *Endangered and Threatened Wildlife and*

2   *Plants; Designation of Critical Habitat for Four Vernal Pool*

3   *Crustaceans and Eleven Vernal Pool Plants*, 71 Fed. Reg. 7,118,

4   7,141-42 (Feb. 10, 2006).

5        82.   Exhibit 2 to this complaint is a true and correct copy

6   of a map, codified at 50 C.F.R. § 17.95(h)(13), depicting areas

7   of critical habitat for vernal pool fairy shrimp.

8        83.   The Site falls within the area marked as "Unit 6" on

9   Exhibit 2.

10       84.   Wetlands at the Site border (or bordered prior to the

11   CWA violations alleged in this complaint), are (or were prior to

12   the CWA violations alleged in this complaint) contiguous to, or

13   neighbor (or neighbored prior to the CWA violations alleged in

14   this complaint) the main stem of Coyote Creek and/or the streams

15   or branches of Coyote Creek within the interior of the Site.

16       **Waters of the United States**

17       85.   The Sacramento River is a traditional navigable water

18   within the meaning of 33 C.F.R. § 328.3(a)(1)from at least Tehama

19   County to the Pacific Ocean.

20       86.   Coyote Creek is a "tributary" of the Sacramento River

21   within the meaning of 33 C.F.R. § 328.3(a)(5).

22       87.   Oat Creek is a "tributary" of the Sacramento River

23   within the meaning of 33 C.F.R. § 328.3(a)(5).

24       88.   The streams or branches of Coyote Creek within the

25   interior of the Site are -- or were prior to the CWA violations

26   alleged in this complaint - "tributaries" of Oat Creek and the

27   Sacramento River within the meaning of 33 C.F.R. § 328.3(a)(5).

28       89.   Wetlands at the Site are -- or were prior to the CWA

1   violations alleged in this complaint -- "adjacent" to one or more

2   tributaries within the meaning of 33 C.F.R. § 328.3(a)(7), (c).

3       90.   Coyote Creek, including the streams or branches of

4   Coyote Creek within (or previously within) the interior of the

5   Site, either alone or in combination with similarly situated

6   lands in the region, significantly affects the chemical,

7   physical, or biological integrity of the Sacramento River.

8       91.   Oat Creek, either alone or in combination with

9   similarly situated lands in the region, significantly affects the

10  chemical, physical, or biological integrity of the Sacramento

11  River.

12      92.   Adjacent wetlands at the Site, either alone or in

13  combination with similarly situated lands in the region,

14  significantly affect or affected the chemical, physical, or

15  biological integrity of the Sacramento River.

16      93.   At all times relevant to the CWA violations alleged in

17  this complaint, the Sacramento River, Oat Creek, Coyote Creek,

18  including the streams or branches of Coyote Creek within the

19  interior of the Site, and adjacent wetlands at the Site

20  constitute  "waters of the United States" and "navigable waters"

21  within the meaning of 33 U.S.C. § 1362(7).

22  **COUNT ONE:   CWA VIOLATIONS BY DEFENDANTS LAPANT AND J&J FARMS**

23      94.   The United States repeats the allegations set forth in

24  Paragraphs 1 through 93 of this complaint.

25      95.   Defendants Roger J. LaPant, Jr. and J&J Farms are each

26  a "person" under 33 U.S.C. § 1362(5).

27      96.   Beginning in or about July 2011, Defendants Roger J.

28  LaPant, Jr. and J&J Farms or a person at their (or either

1  person's) behest operated a tractor with tillage implements

2  and/or other earthmoving equipment at the Site.

3      97.  This equipment operated in uplands as well as in waters

4  of the United States -- potentially 100 or more acres of waters

5  of the United States.

6      98.  As operated, this equipment constituted a "point

7  source" within the meaning of 33 U.S.C. § 1362(14).

8      99.  Operation of this equipment resulted in the placement

9  of dredged spoil, biological materials, rock, sand, cellar dirt,

10 or other earthen material constituting "pollutants" within the

11 meaning of 33 U.S.C. § 1362(6) into waters of the United States.

12     100. Operation of this equipment fragmented and severely

13 impacted hydrophydic plants, substantially disturbed the root

14 system, or involved the mechanized pushing, dragging, or other

15 redepositing of excavated soil material.

16     101. Operation of this equipment had the effect of replacing

17 one or more portions of waters of the United States with dry land

18 or changing the bottom elevation of one or more portions of

19 waters of the United States.

20     102. Operation of this equipment had the effect of

21 redistributing surface and/or sub-surface material in a manner

22 which changed one or more areas of waters of the United States to

23 dry land.

24     103. Operation of this equipment resulted in the "discharge

25 of any pollutant" within the meaning of 33 U.S.C. § 1311(a).

26     104. At no time did Defendants Roger J. LaPant, Jr. and J&J

27 Farms, or any person on their (or either person's) behalf, apply

28 for, secure, or comply with a CWA section 404 permit to discharge

1    pollutants at the Site.

2         105. Defendants Roger J. LaPant, Jr. and J&J Farms violated

3    33 U.S.C. § 1311(a).

4         106. The operation of equipment and resulting discharges of

5    pollutants by or on behalf of Defendants Roger J. LaPant, Jr. and

6    J&J Farms ceased no later than on or about March 23, 2012, when

7    Defendant Roger J. LaPant, Jr. transferred ownership of the Site

8    to Duarte Nursery, Inc.

9         107. After such cessation, Defendants Roger J. LaPant, Jr.

10   and J&J Farms allowed pollutants that had been discharged without

11   authorization to remain in waters of the United States.

12        108. Defendants Roger J. LaPant, Jr. and J&J Farms remain in

13   violation of 33 U.S.C. § 1311(a).

14              **COUNT TWO:  CWA VIOLATIONS BY DEFENDANTS**

15         **GOOSE POND AG, INC. AND FARMLAND MANAGEMENT SERVICES**

16        109. The United States repeats the allegations set forth in

17   Paragraphs 1 through 108 of this complaint.

18        110. On or about October 29, 2012, Duarte Nursery, Inc.

19   transferred ownership of the Site to Defendant Goose Pond Ag,

20   Inc.

21        111. Defendants Goose Pond Ag, Inc. and its land manager,

22   Farmland Management Services, are each a "person" under 33 U.S.C.

23   § 1362(5).

24        112. Beginning on or about November 15, 2012, Defendants

25   Goose Pong Ag, Inc. and Farmland Management Services or persons

26   at their behest operated a slip plow, tractor with tillage

27   implements, road-building machinery, land-leveler, trencher,

28   and/or other earthmoving equipment at the Site.

113. This equipment operated in uplands as well as in waters of the United States -- potentially 100 or more acres of waters of the United States.

114. As operated, this equipment constituted a "point source" within the meaning of 33 U.S.C. § 1362(14).

115. Operation of this equipment resulted in the placement of dredged spoil, biological materials, rock, sand, cellar dirt, or other earthen material constituting "pollutants" within the meaning of 33 U.S.C. § 1362(6) into waters of the United States.

116. Operation of this equipment fragmented and severely impacted hydrophydic plants, substantially disturbed the root system, or involved the mechanized pushing, dragging, or other redepositing of excavated soil material.

117. Operation of this equipment had the effect of replacing one or more portions of waters of the United States with dry land or changing the bottom elevation of one or more portions of waters of the United States.

118. Operation of this equipment had the effect of redistributing surface and/or sub-surface material in a manner which changed one or more areas of waters of the United States to dry land.

119. Operation of this equipment resulted in the "discharge of any pollutant" within the meaning of 33 U.S.C. § 1311(a).

120. At no time did Defendants Goose Pond Ag, Inc. or Farmland Management Services, or any person on their behalf, apply for, secure, or comply with a CWA section 404 permit to discharge pollutants at the Site.

121. Defendants Goose Pond Ag, Inc. and Farmland Management

1  Services violated 33 U.S.C. § 1311(a).

2      122. After ceasing operation of equipment in waters of the

3  United States at the Site, Defendants Goose Pond Ag, Inc. and

4  Farmland Management Services allowed pollutants that had been

5  discharged without authorization to remain in waters of the

6  United States.

7      123. Defendants Goose Pond Ag, Inc. and Farmland Management

8  Services remain in violation of 33 U.S.C. § 1311(a).

9                     **REQUEST FOR RELIEF**

10     WHEREFORE, the United States respectfully requests that this

11  Court order the following relief:

12     Enjoin Defendants from further discharges of pollutants

13  except as in compliance with the CWA;

14     Compel Defendants to restore impacted waters of the United

15  States;

16     Require Defendants to mitigate for impacted waters of the

17  United States;

18     Assess and direct Defendants to pay civil penalties;

19     Award the United States the costs and disbursements of this

20  action; and

21     Grant the United States such other relief as the Court deems

22  appropriate.

23                         Respectfully submitted,

24                         JOHN C. CRUDEN

25                         Assistant Attorney General

26  Dated: June 30, 2016    /s/ Andrew J. Doyle_____
                            Andrew J. Doyle (FL Bar No.84948)
27                          John Thomas H. Do (CA Bar No. 285075)
                            Samara M. Spence (TN Bar No. 031484)
28

```
1                              Trial Attorneys
                               United States Department of Justice
2                              Environment and Natural Resources
                               Division
3                              P.O. Box 7611
                               Washington, DC  20044
4                              (202) 514-4427 (phone; Doyle)
                               (202) 514-2593 (phone; Do)
5                              (202) 514-8865 (facsimile; both)
                               andrew.doyle@usdoj.gov
6                              john.ho@usdoj.gov
7
                               PHILIP A. TALBERT
8                              Acting United States Attorney
                               Gregory T. Broderick (CA Bar No. 220871)
9                              Assistant United States Attorney
                               501 I Street, Suite 10-100
10                             Sacramento, CA  95814
                               (916) 554-2700 (p)
11                             (916) 554-2900 (f)
                               gregory.broderick@usdoj.gov
12
13   Of Counsel:
14   Lisa Clay
     Deputy District Counsel
15   T.A. Holliday
     Assistant District Counsel
16   U.S. Army Corps of Engineers
     Sacramento District
17   1325 J Street
     Sacramento, CA  95814
18
19                             Attorneys for the United States
20
21
22
23
24
25
26
27
28
     Complaint                        19
```

EXHIBITS TO THIS COMPLAINT:

Exhibit 1:      Flow path from the main stem of Coyote Creek at
                the Site to the Sacramento River

Exhibit 2:      Map from 50 C.F.R. § 17.95(h)(13) depicting areas
                of critical habitat for vernal pool fairy shrimp;
                Site falls within area marked "Unit 6"


ALSO ATTACHED TO THIS COMPLAINT:

Civil Cover Sheet

Notice of Related Cases and Summary Judgment Order dated June 10,
2016, by the Honorable Kimberly J. Mueller, United States
District Judge, in *Duarte v. U.S. Army Corps of Eng'rs*, 2:13-cv-
02095-KJM-AC (E.D. Cal.)

Complaint                                    20