1  JEFFREY H. WOOD
   Acting Assistant Attorney General
2  JONATHAN D. BRIGHTBILL
   Deputy Assistant Attorney General
3  ANDREW J. DOYLE
   JOHN THOMAS H. DO
4  ANDREW S. COGHLAN
   United States Department of Justice
5  Environmental and Natural Resources Division
   P.O. Box 7611
6  Washington, DC  20044
   Telephone: (202) 514-4427 (Doyle)
7

8  McGREGOR W. SCOTT
   United States Attorney
9  GREGORY T. BRODERICK
   Assistant United States Attorney
10 501 I Street, Suite 10-100
   Sacramento, CA 95814
11 Telephone: (916) 554-2780

12 *Attorneys for the United States*

13 DOWNEY BRAND LLP
   ROBERT P. SORAN
14 ASHLEY M. BOULTON
   621 Capitol Mall, 18th Floor
15 Sacramento, CA  95814-4731
   Telephone: (916) 444-1000
16

17 *Attorneys for Goose Pond Defendants*

18

19                  UNITED STATES DISTRICT COURT

20                  EASTERN DISTRICT OF CALIFORNIA

21 | UNITED STATES OF AMERICA, | Case No. 2:16-cv-01498-KJM-DB |

22 |         Plaintiff, | |

23 | v. | **CONSENT DECREE BETWEEN THE** |
   | | **UNITED STATES AND GOOSE POND** |
24 | ROGER J. LAPANT, JR., J&J FARMS, | **DEFENDANTS** |
   | GOOSE POND AG, INC. and | |
25 | FARMLAND MANAGEMENT | |
   | SERVICES, | |
26 | | |
   |         Defendants. | |
27

28

WHEREAS Plaintiff United States of America has filed a Complaint in this action alleging that Defendants Roger J. LaPant, Jr., J&J Farms, Goose Pond Ag, Inc., and Farmland Management Services violated and remain in violation of the Clean Water Act ("CWA") section 301(a), 33 U.S.C. § 1311(a);

WHEREAS the Complaint alleges, in its first count, that Roger J. LaPant, Jr.'s and J&J Farms' CWA violations resulted from operations occurring between approximately July, 2011, and March, 2012, on real property (or "Site") near Ohm Road, Paskenta Road, and the main stem of Coyote Creek in Tehama County, California;

WHEREAS the Complaint alleges, in its second count, that Goose Pond Ag, Inc.'s and Farmland Management Services' ("Goose Pond Defendants") CWA violations resulted from operations beginning approximately November, 2012, on the Site;

WHEREAS the Complaint alleges, inter alia, that Goose Pond Defendants' operations resulted in the unauthorized discharge of dredged or fill material into "waters of the United States" that are hydrologically and ecologically connected to Coyote Creek and the Sacramento River;

WHEREAS the Complaint requests that the Court award injunctive relief and civil penalties;

WHEREAS unless otherwise expressly admitted in Goose Pond Defendants' Answer to the United States' Complaint, Goose Pond Defendants do not admit any facts as alleged in the Complaint, and Goose Pond Defendants deny any and all liability to the United States arising out of the transactions or occurrences alleged in the Complaint, but Goose Pond Defendants agree to be bound by this Consent Decree to avoid the time, expense, and uncertainty of further litigation;

WHEREAS the Parties recognize that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation among the Parties, and the Court by entering this Consent Decree finds that it is fair, reasonable, and in the public interest; and

THEREFORE, before the taking of any trial testimony, and without the adjudication or admission of any issue of fact or law except as provided in Section I of this Consent Decree, and

with the consent of the Parties by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. <u>JURISDICTION, VENUE, AND SUFFICIENCY OF COMPLAINT</u>

1. This Court has jurisdiction over the subject matter of the Complaint pursuant to at least 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the Eastern District of California pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c).

3. For purposes of this Consent Decree, including any action to enforce this Consent Decree, Goose Pond Defendants consent to personal jurisdiction and venue.

4. For purposes of this Consent Decree, including any action to enforce this Consent Decree, the Parties agree (without Goose Pond Defendants admitting any liability), and the Court finds, that the Complaint states claims upon which relief can be granted pursuant to CWA sections 301(a) and 309(d), 33 U.S.C. §§ 1311(a) and 1319(d).

## II. <u>APPLICABILITY</u>

5. This Consent Decree applies to and is binding upon the United States, and it also applies to and is binding upon Goose Pond Defendants and any successors, assigns, or other persons otherwise bound by law whether or not such person has notice of this Consent Decree.

6. No transfer of ownership or control of the Site, of any portion of the Site, or of any less-than-fee-simple interest in the Site or a portion thereof (such as an easement or lease) shall relieve Goose Pond Defendants of any of their obligations in this Consent Decree. As a condition of any such transfer, Goose Pond Defendants shall reserve all rights necessary for Goose Pond Defendants to comply with this Consent Decree. At the time of such transfer, Goose Pond Defendants shall provide a copy of this Consent Decree to the transferee, shall obtain the transferee's acknowledgement thereof, and shall provide written notice of the transfer and a copy of such acknowledgement to the United States at the addresses specified in Section XI of this Consent Decree. Any attempted or actual transfer of any interest in the Site without complying with this Paragraph constitutes a violation of this Consent Decree. Currently existing third-party easements on the Site shall not be considered a "transfer of ownership or control of

the Site, or any portion of the Site, or of any less-than-fee-simple interest in the Site or a portion thereof" within the meaning of this Paragraph, nor shall a third-party's exercise of its rights under such currently existing easement result in a breach or default of this Consent Decree by Goose Pond Defendants or their successors and assigns (provided that Goose Pond Defendants or their successors and assigns lack relevant control over the third party's exercise of such rights according to the terms of such currently existing easement); within sixty (60) Days of the Effective Date of this Consent Decree, Goose Pond Defendants shall provide copies of such currently existing third-party easements to the United States at the addresses specified in Section XI of this Consent Decree.

7.      Goose Pond Defendants shall provide a copy of this Consent Decree to all officers and agents whose duties might reasonably include compliance with any provision of this Consent Decree, including any contractor or consultant retained to perform remedial work or monitoring and maintenance required under this Consent Decree.  To the extent that Goose Pond Defendants retain any contractor or consultant to perform remedial work, monitoring and maintenance, or any other obligation required under this Consent Decree, Goose Pond Defendants shall condition any such contract upon performance that conforms to the terms of this Consent Decree.

8.      In any action to enforce this Consent Decree, Goose Pond Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors, or consultants to take any actions necessary to comply with this Consent Decree.

## III.  DEFINITIONS

9.      Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall, unless otherwise provided in this Consent Decree, have the meanings assigned to them in the CWA or such regulations that were in effect immediately prior to the amendments provided in the Clean Water Rule:  Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015).

10.     Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Balance of the Site" shall mean all areas of the Site except for (i.e., exclusive of) the Conservation Reserve.

"Complaint" shall mean the complaint filed by the United States in this action on June 30, 2016.

"Conservation Reserve" shall mean an area of approximately 616 acres within the Site that is shown and outlined in green on Appendix 2 attached hereto; the Conservation Reserve is generally located on the eastern part of the Site as well as the entire length of Coyote Creek's main stem that traverses the Site's southern boundary, including a buffer of one hundred fifty (150) feet north of the northern ordinary high water mark of Coyote Creek's main stem.

"Corps" shall mean the United States Army Corps of Engineers and any of its successor departments or agencies. Unless the context shows otherwise, all references to the United States herein shall include the Corps.

"Day," whether or not capitalized, shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

"Effective Date" shall mean the date on which this Consent Decree is entered by the Court.

"Farming activities" shall mean activities that are appropriate to prepare, maintain, and operate areas for the production of walnuts or other irrigated food crops.

"Goose Pond Defendants" shall mean Defendants Goose Pond Ag, Inc. and Farmland Management Services.

"Parties" shall mean the United States and Goose Pond Defendants.

"Remedial Plan" shall mean the remedial work, monitoring, adaptive management, and maintenance plan prepared and implemented by Goose Pond Defendants, with approval of the Corps, in specified areas of the Site as set forth in Paragraphs 26 and 27 of this Consent Decree and appended to this Consent Decree as Appendix 3.

"Site" shall mean the real property, currently owned or controlled by Goose Pond Defendants, comprising approximately one thousand five hundred five (1,505) acres and located in rural Tehama County, California, just south of the city of Red Bluff and due west of Interstate Five (5). The Site is generally bounded on the north by Ohm Road (which may also be known as Rawson Avenue), on the south by the main stem of Coyote Creek, on the west by Paskenta Road, and on the east by Rawson Road. The Site is currently associated with Assessor Parcel Numbers 037-020-01, -03, -04, -023, -024, -025, and -026. The Site is labeled as such (and "Tehama North Site" in the legend) on Appendix 1 attached hereto.

All references to "depressions" shall mean "wetland vernal pools," "wetland depressions," or "pools" and vice-versa; these terms are interchangeable herein.

All references to "swales" shall mean "wetland swales" and vice-versa; these terms are interchangeable herein.

All references to "wetlands" shall mean "swales" and "depressions."

All references to "drainages" shall mean "drainage feature," "streams," or "stream" and vice-versa; these terms are interchangeable herein.

All references to "aquatic features" shall mean "depressions," "swales," and "drainages."

## IV. SCOPE, EFFECT, AND RESERVATION OF RIGHTS

11. This Consent Decree resolves and shall constitute a complete and final settlement of the civil claims of the United States alleged in the second count of the Complaint, subject to Goose Pond Defendants' compliance with this Consent Decree. The United States covenants not to sue or take administrative action against Goose Pond Defendants and their respective officers, directors, agents, and affiliates for the civil claims of the United States alleged in the second count of the Complaint, subject to Goose Pond Defendants' compliance with this Consent Decree.

12. It is the express purpose of the Parties in entering this Consent Decree to further the objectives set forth in CWA section 101, 33 U.S.C. § 1251.

13. Goose Pond Defendants' obligations under this Consent Decree are joint and several.

14.     The Parties acknowledge that, as of the Effective Date of this Consent Decree, Nationwide Permit 32, 82 Fed. Reg. 1,992 (Jan. 6, 2017), provides CWA section 404 authorization, subject to the conditions provided in Nationwide Permit 32 and this Consent Decree, for any discharge of dredged or fill material that is necessary for Goose Pond Defendants to fulfill the remedial requirements set forth in Paragraphs 26 and 27 of this Consent Decree.

15.     This Consent Decree is not and shall not be interpreted to be a permit, or modification of any permit, under any federal, state, or local laws or regulations.  Goose Pond Defendants are responsible for compliance with all applicable federal, state, and local laws, regulations, and permits; and Goose Pond Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth in this Consent Decree.  The United States does not warrant that Goose Pond Defendants' compliance with any aspect of this Consent Decree will result in compliance with any provision of federal, state, or local laws, regulations, or permits, except as set forth in Paragraph 14 of this Consent Decree.  Further, in any future CWA permit application, Goose Pond Defendants may not rely upon (a) the on-Site remediation work or preservation required under this Consent Decree, as part of any avoidance and minimization measures demonstration; or (b) the off-Site compensatory mitigation required under this Consent Decree, as part of any compensatory mitigation proposal.

16.     Except as provided in Paragraph 14, nothing in this Consent Decree shall limit the ability of the Corps to issue, modify, suspend, revoke, or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the United States Environmental Protection Agency's ability to exercise its authority pursuant to CWA section 404(c), 33 U.S.C. § 1344(c).

17.     This Consent Decree in no way affects the rights of the United States or Goose Pond Defendants as against Defendant Roger J. LaPant, Jr., Defendant J&J Farms, or any other person not a party to this Consent Decree, except as expressly stated in the second sentence of Paragraph 11 of this Consent Decree.

18. The United States reserves all legal and equitable remedies available to enforce this Consent Decree and applicable law, except as expressly stated in Paragraph 11 of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain remedies under the CWA or its implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 11 of this Consent Decree.

(Paragraphs 19 through 21 are intentionally omitted.)

V. <u>REMEDIAL PROVISIONS</u>

A. <u>CIVIL PENALTY</u>

22. Within thirty (30) Days of the Effective Date of this Consent Decree, Goose Pond Defendants shall pay a civil penalty to the United States in the amount of one million seven hundred fifty thousand dollars ($1,750,000).

23. Payment to the United States shall be made in accordance with written instructions to be provided to Goose Pond Defendants by the United States Department of Justice following entry of this Consent Decree. Promptly upon payment, Goose Pond Defendants shall provide written notice thereof to the United States at the addresses specified in Section XI of this Consent Decree.

24. Goose Pond Defendants shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section X in calculating any federal income tax owed.

B. <u>INJUNCTIVE RELIEF</u>

25. <u>Permanent Preservation of the Conservation Reserve</u>. Except as necessary to fulfill the remedial requirements of Paragraphs 26 and 27 of this Consent Decree, Goose Pond Defendants and their agents, successors, and assigns and all persons having actual or constructive notice of this Consent Decree are permanently enjoined from disturbing the Conservation Reserve by any dredging, filling, land clearing, tillage, farming activities, construction work, earthmoving activities, or any pollutant discharge. (The foregoing list is but examples of prohibited disturbance, and these examples may be overlapping in their meaning.)

Nevertheless, Goose Pond Defendants and their agents, successors, and assigns may use the Conservation Reserve for moderate non-irrigated cattle grazing and the following associated activities: above-ground, non-toxic measures to control for weeds, pests, and invasive species; cattle corrals, for loading and unloading cattle outside of aquatic areas; use of gates, fencing, and earthen farm roads that currently exist in the Conservation Reserve; use of existing fuel tank; and construction of a firebreak, if required by Tehama County, outside of aquatic areas; provided, however, that as to Work Areas 5, 6, and 9 within the Conservation Reserve, Goose Pond Defendants must await the reestablishment of vegetation cover in the Conservation Reserve in accordance with the Remedial Plan before conducting such grazing and associated activities in those areas. Goose Pond Defendants and their agents, successors, and assigns may also use the Conservation Reserve for additional activities associated with and necessary to conduct moderate non-irrigated cattle grazing (such as installation and/or maintenance of T-posts or similar fencing, installation of above-ground water sources, and placement of additional earthen access roads for ingress and egress to/from cattle corrals), provided that Goose Pond Defendants first submit a plan with requisite information about the intended additional activities, including their location and impact if any on aquatic areas, to the Corps for its review and approval, which approval shall not be unreasonably withheld. The obligations and rights of this Paragraph shall run with the land and bind Goose Pond Defendants' successors and assigns and any person with actual or constructive notice of it, and shall be enforceable by the United States (by any appropriate legal proceeding, including but not limited to enforcement of this Consent Decree). The Balance of the Site is not affected by this Paragraph.

26. <u>Remedial Work in the Conservation Reserve and Balance of the Site</u>.

a. Goose Pond Defendants have submitted to the Corps, and the Corps has approved, the Remedial Plan that is appended to this Consent Decree as Appendix 3. Within sixty (60) Days of the Effective Date of this Consent Decree, Goose Pond Defendants shall pursue approval by the Corps of a 60-percent drawing set (also referred to as the "Grading Plans" in the Remedial Plan), which approval shall not be unreasonably withheld. If the Corps finds Goose Pond Defendants' 60-percent drawing set to be incomplete or inadequate, the Corps shall

provide Goose Pond Defendants written notice of a determination to decline to accept it, and the Corps may supplement that notice with written recommendations for modifications or additions to the 60-percent drawing set sufficient to make it approvable by the Corps.

    b.    (Paragraph 26.b. is intentionally omitted.)

    c.    Goose Pond Defendants shall implement the Remedial Plan and 60-percent drawing set as approved by the Corps and in accordance with the deadlines set forth therein.

    d.    Within thirty (30) Days of what Goose Pond Defendants believe is the completion of all work set forth in the Remedial Plan (with the exception of monitoring, adaptive management, and maintenance), Goose Pond Defendants shall submit a written request for approval of completion of such work to the Corps, which approval shall not be unreasonably withheld. If the Corps disapproves, Goose Pond Defendants shall promptly correct the deficiencies as identified by the Corps in accordance with a schedule approved by the Corps. Within thirty (30) Days of obtaining the Corps' approval that all remedial work set forth in the Remedial Plan has been completed, Goose Pond Defendants shall provide written notice to the United States at the addresses specified in Section XI of this Consent Decree.

    27.    <u>Monitoring, Adaptive Management, and Maintenance of the Remedial Work</u>. As set forth in the Remedial Plan that is appended to this Consent Decree as Appendix 3, Goose Pond Defendants shall monitor, adaptively manage, and maintain the success of the work required by Paragraph 26 of this Consent Decree for a period of five years following the completion of such work. During this five-year period, Goose Pond Defendants shall submit annual reports to the United States at the addresses specified in Section XI of this Consent Decree. Within thirty (30) Days of what Goose Pond Defendants believe is the completion of all monitoring, adaptive management, and maintenance tasks set forth in the Remedial Plan, Goose Pond Defendants shall submit a written request for approval of such completion, which approval shall not be unreasonably withheld. If the Corps disapproves, Goose Pond Defendants shall promptly correct the deficiencies as identified by the Corps in accordance with a scheduled approved by the Corps. Within thirty (30) Days of obtaining the Corps' approval, Goose Pond

Defendants shall provide written notice to the United States at the addresses specified in Section XI of this Consent Decree.

28. <u>Recording of the Consent Decree in furtherance of Permanent Protections for the Conservation Reserve</u>. Within thirty (30) Days of the Effective Date of this Consent Decree, Goose Pond Defendants shall record a certified copy of this Consent Decree with the Tehama County, California, recorder's office. Within thirty (30) Days of such recording, Goose Pond Defendants shall provide written notice thereof, along with a true and correct copy of the recorded instrument, to the United States at the addresses specified in Section XI of this Consent Decree.

29. <u>Use of the Balance of the Site</u>.

a. This Consent Decree does not prohibit Goose Pond Defendants and their agents, successors, and assigns from undertaking moderate non-irrigated cattle grazing in the Balance of the Site and the following associated activities: above-ground, non-toxic measures to control for weeds, pests, and invasive species; cattle corrals, for loading and unloading cattle outside of aquatic areas; use of gates, fencing, and earthen farm roads that currently exist in the Balance of the Site; and construction of a firebreak, if required by Tehama County, outside of aquatic areas. Goose Pond Defendants and their agents, successors, and assigns may also use the Balance of the Site for additional activities associated with and necessary to conduct moderate non-irrigated cattle grazing (such as installation and/or maintenance of T-posts or similar fencing, placement of above-ground water sources, and placement of earthen access roads for ingress and egress to/from cattle corrals), provided that Goose Pond Defendants first submit a plan with requisite information about the intended additional activities, including their location and impact if any on aquatic areas, to the Corps for its review and consent, which consent shall not be unreasonably withheld.

b. In the event that Goose Pond Defendants or their agents, successors, and assigns wish to undertake activities in the Balance of the Site that are not the activities described in Paragraph 29.a. above, Goose Pond Defendants shall, before initiating such other activities, provide written notification to the Corps fully describing the proposed activities and shall obtain

from the Corps: (1) a written determination that no CWA section 404 permit is required for the proposed activities; or (2) a written verification of the applicability of a nationwide or regional CWA section 404 permit; or (3) an individual CWA section 404 permit. Subject to the provisions of Paragraphs 29.a. and 29.b., nothing in this Consent Decree prohibits any legal use of the Balance of the Site by Goose Pond Defendants and their agents, successors, and assigns.

c. At any time after one (1) year from the Effective Date of this Consent Decree, Goose Pond Defendants and their agents, successors, and assigns may, with respect to the Balance of the Site only, seek from the Corps a jurisdictional determination (which may include a wetland delineation). In making such jurisdictional determination, the Corps shall apply the then-applicable definition of "waters of the United States" and shall otherwise act in accordance with then-governing law. Goose Pond Defendants and their agents, successors, and assigns may thereafter conduct any activities otherwise consistent with then-governing law in areas determined by such jurisdictional determination (as may be modified on judicial review thereof) not to be "waters of the United States." Further, as to those areas (i.e., areas within the Balance of the Site determined by such jurisdictional determination (as may be modified on judicial review thereof) not to be "waters of the United States"), Paragraphs 29.a. and 29.b. above shall cease being applicable to those areas. Nothing in this Consent Decree is intended to alter otherwise governing law or processes associated with jurisdictional determinations, including, for example, the duration of their validity.

30. <u>Off-Site Compensatory Mitigation</u>:

a. Within sixty (60) Days of the Effective Date of this Consent Decree, Goose Pond Defendants shall submit to the Corps for its review and approval, which shall not be unreasonably withheld, a written proposal for the expenditure of three million five hundred fifty thousand dollars ($3,550,000) to purchase vernal pool establishment, re-establishment, or rehabilitation credits from one or more Corps-approved mitigation banks that serve the area encompassing the Site in Tehama County, California. To the extent that insufficient credits exist at such local banks, Goose Pond Defendants may propose to expend the remaining funds to purchase vernal pool establishment, re-establishment, or rehabilitation credits (or their functional

equivalent) from nearby Corps-approved mitigation banks or from the National Fish and Wildlife Foundation's In Lieu Fee Program for the Northwestern Sacramento Valley Vernal Pool Service Area.

b.     Within thirty (30) Days of the Corps' approval of the written proposal required by subsection (a) above, Goose Pond Defendants shall effect off-site compensatory mitigation by completing the total expenditure of no more and no less than three million five hundred fifty thousand dollars ($3,550,000) in accordance with the Corps' approval under Paragraph 30.a. above, and by providing written notice of such completion to the United States at the addresses specified in Section XI of this Consent Decree.

## VI.  <u>SUBMISSIONS</u>

31.     Each submission by Goose Pond Defendants under this Consent Decree shall be signed by an official of the submitting party and include a certification to the effect of the following:  "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

32.     The reporting requirements of this Consent Decree do not relieve Goose Pond Defendants of any reporting obligations otherwise required by federal, state, or local law, regulation, permit, or other requirement.

33.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

# VII. RETENTION OF RECORDS AND ACCESS

34. Until three (3) years after termination of this Consent Decree pursuant to Section XVI, Goose Pond Defendants shall retain, and shall instruct their contractors, consultants, and other agents to preserve, all non-identical copies of all documents, records, or other information (including electronically stored information) in their or their contractors' or other agents' possession or control, or that come into their contractors' or other agents' possession or control, and that relate in any manner to Goose Pond Defendants' performance of its obligations under this Consent Decree. At any time during this information-retention period, upon request by the United States, Goose Pond Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph. If Goose Pond Defendants assert that any information is protected from disclosure under any privilege or protection recognized by federal law, and the United States disputes such assertion, the dispute may be resolved in accordance with Section VIII of this Consent Decree.

35. (Paragraph 35 is intentionally omitted.)

36. The United States, including its contractors and/or consultants, shall have the right to access the Site, at all reasonable times, with reasonable advance notice, in order to:

    a.    monitor the progress of activities required under this Consent Decree;

    b.    verify any data or information submitted to the Corps by or on behalf of Goose Pond Defendants;

    c.    obtain samples to monitor or confirm compliance with this Consent Decree;

    d.    obtain documentary evidence, including photographs and similar data, to monitor or confirm compliance with this Consent Decree; and

    e.    assess compliance with this Consent Decree.

Nothing in this Consent Decree is intended to alter otherwise governing law of premises liability.

37. This Consent Decree in no way limits or affects the United States' or the Corps' otherwise existing rights of entry and inspection or any right to obtain information under

applicable law, nor does it limit or affect any otherwise existing duty or obligation of Goose Pond Defendants to maintain documents, records, or other information.

## VIII.  DISPUTE RESOLUTION

38.     Unless otherwise expressly provided for in this Consent Decree, the Parties shall attempt to resolve any and all disputes arising under or with respect to this Consent Decree through the dispute resolution procedures of this Section ("Dispute Resolution").

39.     A dispute shall be considered to have arisen when a written Notice of Dispute is transmitted to the opposing party at the addresses specified in Section XI.  Such Notice of Dispute shall state clearly the matter in dispute.

40.     If after 30 Days of transmittal of the Notice of Dispute, the complainant concludes that the Parties have reached an impasse, then the complainant may seek resolution of the dispute by the Court.  The Parties may continue to attempt to resolve the Notice of Dispute while the matter is pending before the Court.

41.     The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Goose Pond Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties and interest, if applicable to the disputed matter, shall continue to accrue from the first Day of violation, but payment shall be stayed pending resolution of the dispute as provided in Section X of this Consent Decree.  If Goose Pond Defendants do not prevail on the disputed issue, stipulated penalties and interest, if applicable, shall be assessed and paid as provided in Section X of this Consent Decree.  If determined by the Court that Goose Pond Defendants did not violate the Consent Decree, no stipulated penalty or interest shall be assessed.

(Paragraphs 42 and 43 are intentionally omitted.)

## IX. FORCE MAJEURE

44.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Goose Pond Defendants, of any person controlled by Goose Pond Defendants, or of Goose Pond Defendants' contractors or consultants that delays or

prevents the performance of any obligation under this Consent Decree despite Goose Pond Defendants' best efforts to fulfill the obligation.

45. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Goose Pond Defendants shall provide notice to the United States, at the addresses specified in Section XI, within a reasonable time after Goose Pond Defendants first know or should know that the event might cause a delay. Goose Pond Defendants shall also provide an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Goose Pond Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a defense; and a statement as to whether, in the opinion of Goose Pond Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Goose Pond Defendants shall include with any written notice required by this Section all relevant documentation.

46. If the United States agrees in writing that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event may be extended for such additional time as may be necessary to complete those obligations under the circumstances.

47. If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, or does not agree to the extension of time sought by Goose Pond Defendants, then Goose Pond Defendants may invoke Dispute Resolution procedures under Section VIII of this Consent Decree.

48. If Goose Pond Defendants invoke Dispute Resolution procedures under Section VIII of this Consent Decree, Goose Pond Defendants shall have the burden of demonstrating that the delay or anticipated delay has been or will be caused by a force majeure event; the number of Days of delay or anticipated delay that was or will be caused by such force majeure event; that the duration of the delay or the extension sought was or will be warranted under the

circumstances; that Goose Pond Defendants could not have foreseen and prevented such delay; that Goose Pond Defendants exercised best efforts to prevent, avoid, minimize and mitigate the delay and its effects; and that Goose Pond Defendants complied with the requirements of this Section.

## X.  STIPULATED PENALTIES

49.    Goose Pond Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree in accordance with this Section, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by this Consent Decree, including but not limited to any remedial work plan or schedule approved under this Consent Decree, within the specified time schedules established by or approved under this Consent Decree.

50.    Stipulated penalties shall accrue for violating this Consent Decree in the amount of three thousand dollars ($3,000) per Day for each Day that the violation persists; however, an insubstantial violation that is cured within seven (7) days of Goose Pond Defendants' receiving written notice from the United States or the Corps shall not incur penalties greater than ten thousand dollars ($10,000).

51.    Stipulated penalties under this Section shall begin to accrue on the Day a violation occurs and shall continue to accrue until the violation ceases.

52.    Except as provided in this Section, Goose Pond Defendants shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.  Goose Pond Defendants shall make any such payment in accordance with written instructions to be provided by the United States.  Upon such payment, Goose Pond Defendants shall provide written notice thereof to the United States at the addresses specified in Section XI of this Consent Decree.

53.    The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

54.    Any disputes concerning the amount of stipulated penalties or the underlying violation that gives rise to the assessment of stipulated penalties are subject to the Dispute

Resolution provisions of Section VIII.  Stipulated penalties disputed by Goose Pond Defendants and any applicable interest shall continue to accrue as provided in this Consent Decree, but need not be paid until the following:

a.      If the dispute is resolved by agreement between the Parties, Goose Pond Defendants shall pay the amount due under such agreement, together with any applicable interest, to the United States within thirty (30) Days of the effective date of the agreement.

b.      If the dispute is taken to this Court, Goose Pond Defendants shall pay all accrued penalties determined by the Court to be owing, together with any applicable interest, to the United States within thirty (30) Days of receiving the Court's decision, except as provided in subparagraph c, below.

c.      If any party appeals the Court's decision, Goose Pond Defendants shall pay all accrued penalties determined to be owing, together with any applicable interest, to the United States within fifteen (15) Days of receiving the final appellate decision.

55.      If Goose Pond Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Goose Pond Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Goose Pond Defendants' failure to pay any stipulated penalties.

56.      The payment of stipulated penalties and interest, if any, shall not alter in any way Goose Pond Defendants' obligation to complete performance of the requirements of this Consent Decree.

57.      Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section IV, the United States expressly reserves the right to seek any other relief it deems appropriate for Goose Pond Defendants' violation of this Consent Decree or applicable law, including but not limited to an action against Goose Pond Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a

| | |
|---|---|
| 1 | violation of this Consent Decree shall be reduced by an amount equal to the amount of any |
| 2 | stipulated penalty assessed and paid pursuant to this Consent Decree. |
| 3 | XI. <u>NOTICES AND COMMUNICATIONS</u> |
| 4 | 58.     All notices and communications required under this Consent Decree shall be |
| 5 | made to the Parties through each of the following persons and addresses: |
| 6 | a.     <u>TO THE UNITED STATES</u>: |
| 7 | i.     TO THE DEPARTMENT OF JUSTICE: |
| 8 | LETITIA A. GRISHAW<br>Chief, Environmental Defense Section |
| 9 | ANDREW J. DOYLE<br>JOHN THOMAS H. DO |
| 10 | ANDREW S. COGHLAN<br>United States Department of Justice |
| 11 | Environment and Natural Resources Division<br>P.O. Box 7611 |
| 12 | Washington, DC 20044<br>andrew.doyle@usdoj.gov |
| 13 | john.do@usdoj.gov<br>andrew.coghlan@usdoj.gov |
| 14 | DJ # 90-5-1-1-20800 |
| 15 | AND |
| 16 | McGREGOR W. SCOTT<br>United States Attorney |
| 17 | GREGORY T. BRODERICK<br>Assistant United States Attorney |
| 18 | 501 I Street, Suite 10-100<br>Sacramento, CA 95814 |
| 19 | gregory.broderick@usdoj.gov |
| 20 | |
| 21 | ii.     TO THE CORPS:<br>A.L. FAUSTINO |
| 22 | District Counsel |
| 23 | U.S. Army Corps of Engineers<br>Sacramento District |
| 24 | 1325 J Street, Room 1440<br>Sacramento, CA  95814 |
| 25 | Al.Faustino@usace.army.mil |
| 26 | AND |
| 27 | |
| 28 | MICHAEL S. JEWELL<br>Chief, Regulatory Division |

U.S. Army Corps of Engineers
Sacramento District
1325 J Street, Room 1440
Sacramento, CA 95814
Michael.S.Jewell@usace.army.mil

   b.  <u>TO GOOSE POND DEFENDANTS:</u>

     i.  TO GOOSE POND AG, INC.:

OLIVER WILLIAMS IV.
Goose Pond Ag, Inc.
197 Clarendon Street
Boston, MA 02116

     ii.  FARMLAND MANAGEMENT SERVICES:

PRESIDENT
Farmland Management Services
301 East Main Street
Turlock, CA 95380

     iii.  AND WITH COPIES TO:

PATRICIA WALL MUNDY
General Counsel
Hancock Natural Resources Group
197 Clarendon Street
Boston, MA 02116
pmundy@hnrg.com

ROBERT P. SORAN, ESQ.
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95746
rsoran@downeybrand.com

  59.  Any Party may, by written notice to the Parties, change its designated notice recipient or notice address provided above.

  60.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII.  COSTS OF SUIT

61.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including reasonable attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Goose Pond Defendants.

## XIII.  PUBLIC PARTICIPATION

62.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Goose Pond Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Goose Pond Defendants in writing that it no longer supports entry of the Decree.

(Section XIV and Paragraphs 63 through 65 are intentionally omitted.)

## XV.  MODIFICATION

66.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon the Court's approval.  Nothing in this Consent Decree shall preclude Goose Pond Defendants from seeking modification of Paragraph 25 of this Consent Decree to conduct "establishment (creation)" (33 C.F.R. § 332.2) in upland areas in the Conservation Reserve, in accordance with then-governing law.  The United States expresses no view on the merits or demerits of any such proposal, and nothing in this Consent Decree is intended to alter the United States' discretion in reviewing any such proposal.

## XVI.  TERMINATION

67.     This Consent Decree terminates eight (8) years following the Effective Date, unless, at that time or at any time during the life of this Consent Decree, Goose Pond Defendants are or were out of compliance with any provision of this Consent Decree, in which case this

Consent Decree shall not expire until eight (8) years following the Effective Date plus the total of all Days that Goose Pond Defendants were out of compliance with any provision of this Consent Decree. In no event shall this Consent Decree terminate if Goose Pond Defendants remain out of compliance with any provision of this Consent Decree.

68. Irrespective of Paragraph 67 above, termination of this Consent Decree does not extinguish: (a) Paragraph 25 above, and (b) Paragraph 36.c., 36.d., and 36.e. above insofar as they apply to assessing compliance with Paragraph 25 for the Conservation Reserve. In addition, termination of this Consent Decree does not affect the expiration of Paragraph 34 above because, as provided in that Paragraph, it expires three (3) years after termination of this Consent Decree.

(Paragraphs 69 and 70 are intentionally omitted.)

XVII. SIGNATURES/SERVICE

71. Each undersigned representative of Goose Pond Defendants and the United States Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the party he represents to this document.

72. This Consent Decree may be signed in counterparts, such counterpart signature pages shall be given full force and effect, and its validity shall not be challenged on that basis.

XVIII. INTEGRATION

73. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes any prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than Appendices hereto and modifications made effective in accordance with Section XV of this Consent Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XIX.  FINAL JUDGMENT AND RETENTION OF JURISDICTION

74.     Upon its approval and entry by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Goose Pond Defendants.  The Parties waive any rights to appeal such final judgment.

75.     This Court retains jurisdiction over this action for the purpose of resolving disputes arising under this Consent Decree, or entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XX.  APPENDICES

76.     The following Appendices are attached to and part of this Consent Decree:

      a.     Appendix 1, which shows the Site's location and boundary.

      b.     Appendix 2, which shows the Conservation Reserve's boundary.

      c.     Appendix 3, which is the Corps-approved Remedial Plan.

(Remainder of page is intentionally blank.)

JEFFREY H. WOOD
Acting Assistant Attorney General
JONATHAN D. BRIGHTBILL
Deputy Assistant Attorney General

Dated: _Sept. 11_, 2018

ANDREW J. DOYLE
JOHN THOMAS H. DO
ANDREW S. COGHLAN
United States Department of Justice
Environmental and Natural Resources Division
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 514-4427 (Doyle)
andrew.doyle@usdoj.gov

McGREGOR W. SCOTT
United States Attorney
GREGORY T. BRODERICK
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2780
gregory.broderick@usdoj.gov

*Attorneys for the United States*

Dated: 9/11, 2018

_____
Oliver Williams, IV
*For: Goose Pond Ag, Inc.*

_____
Mark Hutson
*For: Farmland Management Services*

*Approved as to form*

_____
DOWNEY BRAND LLP
ROBERT P. SORAN
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
rsoran@downeybrand.com

*Attorneys for Goose Pond Defendants*

Dated: _____, 2018

_____
Oliver Williams, IV
*For: Goose Pond Ag, Inc.*


_____
Mark Hutson
*For: Farmland Management Services*


*Approved as to form*


_____
DOWNEY BRAND LLP
ROBERT P. SORAN
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
rsoran@downeybrand.com

*Attorneys for Goose Pond Defendants*

Dated: _____, 2018

_____
Oliver Williams, IV
*For: Goose Pond Ag, Inc.*


_____
Mark Hutson
*For: Farmland Management Services*


*Approved as to form*

_____
DOWNEY BRAND LLP
ROBERT P. SORAN
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
rsoran@downeybrand.com

*Attorneys for Goose Pond Defendants*

1    IT IS SO ORDERED

2

3    Dated, entered, and made effective this 10th day of June, 2019.

4

5

6    _____

7    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Tehama North Site: Tehama County, CA





**616 acre Conservation Reserve with Coyote Creek**

Appendix 2 to Consent Decree:  USA / Goose Pond Defendants

2:16-cv-01498-KJM-DB (E.D. Cal.)

**REMEDIAL PLAN**

**September 10, 2018**

**Purpose**

The purposes of this Remedial Plan are: (1) to describe the planning, objectives, and implementation of remedial work to be completed pursuant to Paragraph 26 of the Consent Decree; and (2) to describe the planning, objectives, and implementation of monitoring, adaptive management, and maintenance of the success of the remedial work pursuant to Paragraph 27 of this Consent Decree.

**Project Goal and Objectives**

The primary goal of the Remedial Plan is to "re-establish" surface water flows in specified areas that generally focus on the Site's main streams and swales. The term "re-establish" is used in a limited sense; it is the United States' contention that the Site's surface water flow patterns and other aspects of aquatic functioning cannot be fully restored because of the impact of the activities that occurred there (and which are the subject of the United States' Complaint). Goose Pond Defendants do not agree with the United States' contention, but they do agree to perform the remedial work and monitoring, adaptive management, and maintenance as described herein.

The objectives of the remedial work are: (1) to minimize some of the impact of prior activities; (2) to improve the current condition of surface water flow patterns by mimicking pre-2011 topography; (3) to avoid directing high or medium energy (potentially erosive) surface water flows and sediment into aquatic features; and (4) to revegetate remediated areas with a native seed mix and to take other appropriate erosion and sediment control measures.

**Planning**

Goose Pond Defendants will prepare Site Grading Plans (Plans) that show the areas where work will be done. The Plans will be sufficient to secure a grading permit, if required, from the County of Tehama. The work areas will be consistent with the areas shown on Exhibit WP-1 and as described in this Remedial Plan. Detailed sheets for each area are also given in this Remedial Plan (Appendix A).

The Plans will show the areas to be graded or smoothed, the installation of erosion control measures, and/or areas to be planted. The Plans will show grading limits, final elevations and flow lines. Work will be designed to ensure that flow lines are established to allow surface water to flow within swales to downstream areas without causing undue erosion. Any required engineering calculations related to drainage and erosion control will be included in the grading plan set.

As set forth in Paragraph 26.a. of the Consent Decree, Goose Pond Defendants will provide the Corps of Engineers with a 60% drawing set for comment and approval. The 60% drawing set shall contain additional details about the remedial work and representative ground-level photographs to help illustrate terminology (for example, the different remedial work to be done in "deeper gullies" versus "smaller, shallower gullies" in Work Area 3).

1

Appendix 3 to Consent Decree:   USA / Goose Pond Defendants        2:16-cv-01498-KJM-DB (E.D. Cal.)

**Work Areas**

The Work Areas in the Site are described in this Section. The Work Area numbers refer to Exhibit WP-1. Work will largely be done in linear swales and their buffers as described below. More detailed sheets for each specific corresponding Work Area are provided in Appendix A.

Work Area 1. <u>Flattening and leveling of furrows within portion of shallow swale in slip plowed area</u>.

The flow line for a swale adjacent to and/or within a graded farm road west of the PGE powerline easement where slip plowing and/or scraping occurred and east of the PGE powerline easement, where a several areas of the swale flow line are interrupted by a single or double pass of the slip plow, will be repaired to "re-establish" unimpeded surface flow to the drainage north of Ohm Road. Work will be conducted within approximately 900 feet of the length of the swale within a 60 foot area along center line of swale. The swale was approximately 10 feet wide at this location such that 25 foot buffers will be provided on either side. Erosion control measures (e.g. coir fiber rolls) to be placed along either side of the remediated area to control erosion, if occurring, from surrounding uplands. Seeding with a native grass seed mix[1] will be done after grading.

Work Area 2. <u>Flattening and leveling of furrows within three swales where slip plowed areas crossed or occurred within the swale(s) and removal of fill in two small swales</u>.

Two swales were crossed by the slip plowing on the western portion of the property and one swale was almost entirely impacted by the slip plowing in an area east of the powerline corridor. Total length of work is approximately 3000 ft. and work to be done within 70 foot wide area along center line of the three swales. The swales range in width between 10-20 feet, so this will allow for a 25 foot buffer, at minimum on either side of the swales. Grade control may be necessary including coir fiber rolls and/or rock berms across the regraded swale(s) in steeper locations where the gradient is greater than 5% until revegetation is established. Erosion control measures (e.g. coir fiber roles) to be placed along either side of 70 foot wide area to control erosion, if occurring, from entering the remediated area. Seeding with a native grass seed mix will be done after grading.

In addition, fill placed in two swales west of the slip plowed areas will be removed to the original contours of the swale and the flow line will be re-established so that water flows unimpeded downslope.

Work Area 3. <u>Repair of gullies sufficient to eliminate erosion at three locations at base of wetland swales where they enter Coyote Creek.</u>

One of two techniques will be used depending upon the severity of the erosion.

- For deeper gullies, a rock berm will be placed at end of the gully to retain soil within the filled portion of the gully. For some gullies, several rock berms may be required along its

---

[1] A typical native seed mix will include *Bromus carinatus*, California Brome, *Elymus glaucus,* Blue Wildrye, *Vulpia microstachys*, Three Weeks Fescue, *Trifolium willdenovii*, Tomcat Clover. Additional native grasses such as *Festuca rubra* Molate/Molate Blue Fescue and *Festuca occidentalis*/Western Fescue may be added to the mix depending upon availability.

length. Angular rock with diameters that averages 1/4 to 1/3 of the width of the channel bed will be used. Erosion control fabric will be placed on the upstream portion of the berm to reduce soil loss through the berm. The berm will be sloped up from Coyote Creek to allow for flow to occur over the top of the berm. Upstream of the rock berm, native soil from the site will be placed within the gully. The soil will be compacted to 85% compaction into gully behind rock. Additional erosion control measures will be placed to slow down flows until the area is revegetated using a native grass seed mix.

- For smaller, shallower gullies, the head cut will be repaired by regrading the slopes and placement of rock at the headcut. The sides of the gully will be regraded to create a gentle slope on either side. Erosion control fabric will be used on the lower portion of the side slopes. All work areas will be revegetated with native seed mix.

Work Area 4. <u>Flattening and leveling of swale through slip plowed area.</u>

The flow line of a swale that was crossed by slip plowing will be re-established by flattening and removing the furrows that interrupted its flow. Approximately 500 feet of the swale will be leveled within a 60 foot wide corridor. Erosion control measures (eg. coir fiber rolls) will be placed along either side of remediated area. Seeding with a native grass seed mix will be done after grading.

Work Area 5. <u>Flattening of dead furrows along the flow line of the swale</u>

Furrows within seasonal wetlands within the seasonal wetlands of the large swale within the Conservation Reserve will be smoothed by using small dozer/tractor. Prior to the work, the areas to be smoothed will be marked in the field using flags. After smoothing, the native grass seed mix will be applied to disturbed areas.

Work Area 6. <u>Removing berms on either side of the farm roads where the roads crossed seasonal swales at locations identified in WP-1.</u>

During the grading of farm roads, berms resulted on one or both sides of the farm road. Where they crossed swales, the berms will be removed. The surface will be graded to form a smooth transition to hillslope grades on either side of the road as necessary to remove any impediments to flow. The soil will be placed in upland areas[2] and graded to be consistent with and form smooth transitions to surrounding topography. The total length of berms removed at various locations (on either side of the farm road) is approximately 3000 ft. Seeding with a native grass seed mix will be done in the areas of berm removal and soil disposal.

Work Area 7. <u>Installation of erosion control measures on smoothed slope.</u>

Where smoothing occurred along the slope adjacent to an existing swale, erosion control measures will be installed to minimize soil erosion from entering waters and wetlands. The soil erosion control

---

[2] "Upland" areas are those areas of dry lands that are outside the boundaries of streams, swales, open ponded depressions, and other wetlands, including but not limited to areas delineated in the 1994 delineation boundaries.

measures will include placement of coir fiber rolls and seeding with native species erosion control mix.

Work Area 8. <u>Flattening and leveling of furrows in the upper portion of one swale where slip plowing occurred</u>.

Total length of the swale at this location is approximately 100 feet and work will be done within a 60 foot wide area along the center line of the swale to re-establish the surface water flow line. The swale is approximately 10 feet wide, so a buffer of 25 feet will be provided on either side. Seeding with a native grass seed mix will be placed after grading.

Work Area 9. <u>Smoothing of disced areas and removal of fill in and proximate to vernal pools</u>.

As shown on the aerial underlying Exhibit WP-1, discing occurred proximate to vernal pools and there is fill material in vernal pools. A small tractor will be used to remove any fill, smooth all disced areas, mimic the topographic condition of the features as they existed prior to 2011 (as guided by the 1994 delineation), re-establish surface water connections, and eliminate erosion into the pools and downstream.

**Implementation**

Sixty percent drawings will be provided to the Corps within 60 days following the Effective Date of the Consent Decree. After the Corps approval, work will proceed and be completed during the first available dry season following the Effective Date of the Consent Decree: May 1-September 30. Work is anticipated to take approximately 60 days. Work areas will be delimited by flagging or other appropriate means. Work will proceed under the supervision of the restoration scientist and/or project engineer. Any dirt removed from the work areas will be retained on-site in upland areas as defined in Footnote 2.

Work will follow the Plans as approved. Following grading, elevational surveys will be conducted to assure flow lines are re-established. Rock work and erosion control measures will be installed as designed. Seeding will be done near the beginning of the wet season that follows with a seed mix (see Footnote 1) specified by the restoration scientist.

**Maintenance, Monitoring, and Adaptive Management**

Goose Pond Defendants will be responsible for conducting maintenance of the Work Areas.

Maintenance will include the following actions:

- Prior to the winter, all erosion control measures will be assessed and maintained as necessary.
- Following the first rain of greater than 1.5 inches, monitoring will be conducted to determine if any Work Areas have exhibited erosion that require repair. Following visits, maintenance actions will be implemented as needed to repair any damaged erosion control measures,

correct any changes in the expected flow lines in the swales, and to establish vegetative cover sufficient to control surface soil erosion.

- Photographs and records of actions taken will be made and included in the annual report to the Corps of Engineers.

The monitoring will be conducted for five (5) years during the winter season at each of the work areas. Representative ground based photographs will be taken at each of the Work Areas. In the case of larger activities, such as Work Area 5, more representative photographs will be taken. Monitoring will consist of field observations of surface water flow, any evidence of erosion into aquatic areas, damage to erosion control measures requiring maintenance, and vegetative cover relative to reference areas within the Conservation Reserve. Precipitation data for the adjacent Red Bluff airport will be used to determine percent of normal rainfall for the monitoring period.

For vegetative cover, three reference sites will be selected within the Conservation Reserve that are similar to the swales where flow lines are being re-established. For Work Area 9, three vernal pool reference sites will be selected in the Conservation Reserve. The reference areas will be designated on the 60% plans to be submitted to the Corps for approval. At each reference locations, total vegetative cover will be recorded as well as the percent cover by species present within a standardized quadrat in the bottom of the swale and in the adjoining upland buffer area. For vernal pools, the reference sites will be the bottom of the pool and the adjoining upland edge. The Wetland Plant Indicator status (using the most current plant list issued by the Corps) will be recorded for each species. For each Work Area, replicate quadrats will be measured in a similar fashion.

Performance Criteria for the Work Areas include:

- Re-establishment of natural flow lines through slip plowed areas for activities 1, 2, 4, 6, and 8.
- Control of erosion within and along re-established swales in 1, 2, and 4.
- Removal of erosion control gullies at three locations for activity 3.
- Erosion control on side slope of wetland for activities 7 and 9
- Filling and smoothing of large dead furrows for activity 5.
- Total vegetative cover will be similar (within 95% confidence interval) to the average recorded in the reference sites for both the swale bottom and the upland buffer or vernal pool bottom and adjoining uplands, whichever is applicable.
- Wetland Plant Indicator Status[3] will be similar to or wetter than the reference sites in the Conservation Reserve based on a determination of the Prevalence Index[4].

---

[3] Native grass seed will be used for the Work Areas, however, the Site is largely non-native annual grassland. These non-native species produce abundant seed and will likely rapidly re-colonize the Work Areas following grading. At present, the most dominant grass in swales within the Conservation Reserve is *Festuca perennis*, Italian ryegrass, a FAC species. It is not expected that species diversity will be similar so the Wetland Plant Indicator Status will be used to assess performance.

[4].Prevalence Index as described in the 2008 Arid West Regional Supplement to the Corps Manual.

An annual report will be submitted to the Corps in the spring following the first year of monitoring. The Corps will notify Goose Pond if any corrective actions are needed prior to the next monitoring year.

Adaptive management actions may be undertaken should any remediation be necessary. Adaptive management actions may include additional erosion control measures outside of the buffer areas if excessive erosion is noted that is contributing sediment to aquatic areas, additional seeding or a different native seed mix as needed to reach expected plant cover or Prevalence Indicator, or other actions that are appropriate to achieve the performance standards and meet the goals of the Remedial Plan. Such adaptive management actions will be recommended to the Corps during the annual monitoring reports and, if approved by the Corps, will be implemented.



# Exhibit WP-1

1. Regrade approx 750 ft of drainage through slip plowed areas.
2. Regrade three swales through slip plowed area. Total length: 3000 ft Remove fill from two swales
3. Fill erosion gullies, compact soils, and install erosion control measures at 3 locations.
4. Regrade swales through slip plowed area. Total length 500 ft.
5. Remove dead furrows from large swale by leveling. Total length approx. 9000 ft. Number of dead furrows varies.
6. Remove berms along roads that cross swales. Total length of berms to be removed approx. 3000 ft
7. Control erosion on upland slope on north side of swale.
8. Regrade swale through slip plowed area. Total length 100 feet.
9. Smooth disced areas around edge of pools to control erosion.

APPENDIX A:  Work areas in the Site

# Work Area: 1

Tehama County, California

## Work Area

-  1 - Re-establish flow line
-  2 - Re-establish flow line
-  3 - Repair erosion gully
-  4 - Re-establish flow line
-  5 - Repair dead furrow where present
-  6 - Farm road berm removal
-  7 - Erosion control measures
-  8 - Re-establish flow line
-  9 - Fill removal & smoothing along edge
-  Selected flow line





0    100    200

Feet

N





# Work Area: 2a

Tehama County, California

**Work Area**

| | |
|---|---|
|  | 1 - Re-establish flow line |
|  | 2 - Re-establish flow line |
|  | 2 - Remove fill |
|  | 3 - Repair erosion gully |
|  | 4 - Re-establish flow line |
|  | 5 - Repair dead furrow where present |
|  | 6 - Farm road berm removal |
|  | 7 - Erosion control measures |
|  | 8 - Re-establish flow line |
|  | 9 - Fill removal & smoothing along edge |
|  | Delineation 1994 |
|  | Selected flow line |



0    100    200
Feet


N

# Work Area: 2b

Tehama County, California



**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

 ── Selected flow line




N

0  100  200
Feet



# Work Area: 3a
Tehama County, California

**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

 Selected flow line





0    100    200
Feet

# Work Area: 3b

Tehama County, California

## Work Area

| | |
|---|---|
|  | 1 - Re-establish flow line |
|  | 2 - Re-establish flow line |
|  | 3 - Repair erosion gully |
|  | 4 - Re-establish flow line |
|  | 5 - Repair dead furrow where present |
|  | 6 - Farm road berm removal |
|  | 7 - Erosion control measures |
|  | 8 - Re-establish flow line |
|  | 9 - Fill removal & smoothing along edge |
|  | Selected flow line |







0    100    200
Feet

# Work Area: 3c
Tehama County, California

**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

 Selected flow line







0    100    200

Feet



**Work Area**

1 - Re-establish flow line

2 - Re-establish flow line

3 - Repair erosion gully

4 - Re-establish flow line

5 - Repair dead furrow where present

6 - Farm road berm removal

7 - Erosion control measures

8 - Re-establish flow line

9 - Fill removal & smoothing along edge

Selected flow line

N

0        100        200
Feet



**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

Delineation 1994

Selected flow line





0    100    200

Feet



# Work Area: 5b

Tehama County, California

## Work Area

- 1 - Re-establish flow line
- 2 - Re-establish flow line
- 3 - Repair erosion gully
- 4 - Re-establish flow line
- 5 - Repair dead furrow where present
- 6 - Farm road berm removal
- 7 - Erosion control measures
- 8 - Re-establish flow line
- 9 - Fill removal & smoothing along edge
- Delineation 1994
- Selected flow line



0 100 200
Feet

N



# Work Area: 5c

Tehama County, California

**Work Area**

- 1 - Re-establish flow line
- 2 - Re-establish flow line
- 3 - Repair erosion gully
- 4 - Re-establish flow line
- 5 - Repair dead furrow where present
- 6 - Farm road berm removal
- 7 - Erosion control measures
- 8 - Re-establish flow line
- 9 - Fill removal & smoothing along edge
- Delineation 1994
- Selected flow line



0 100 200

Feet

N



## Work Area: 5d
Tehama County, California

**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

9 - Fill removal & smoothing along edge

 Delineation 1994

Selected flow line



0 100 200
Feet


N



# Work Area: 6a
### Tehama County, California

**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

 Selected flow line





N

0    100    200
Feet



# Work Area: 6b
Tehama County, California

**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

 Selected flow line




N

0    100    200
Feet



# Work Area: 6c

Tehama County, California

## Work Area

| | |
|---|---|
|  | 1 - Re-establish flow line |
|  | 2 - Re-establish flow line |
|  | 3 - Repair erosion gully |
|  | 4 - Re-establish flow line |
|  | 5 - Repair dead furrow where present |
|  | 6 - Farm road berm removal |
|  | 7 - Erosion control measures |
|  | 8 - Re-establish flow line |
|  | 9 - Fill removal & smoothing along edge |
|  | Selected flow line |



0    100    200
Feet

N





# Work Area: 6d

Tehama County, California

## Work Area

| | |
|---|---|
|  | 1 - Re-establish flow line |
|  | 2 - Re-establish flow line |
|  | 3 - Repair erosion gully |
|  | 4 - Re-establish flow line |
|  | 5 - Repair dead furrow where present |
|  | 6 - Farm road berm removal |
|  | 7 - Erosion control measures |
|  | 8 - Re-establish flow line |
|  | 9 - Fill removal & smoothing along edge |
|  | Selected flow line |



0  100  200
Feet


N



# Work Area: 6e

Tehama County, California

## Work Area

| | |
|---|---|
|  | 1 - Re-establish flow line |
| | 2 - Re-establish flow line |
| | 3 - Repair erosion gully |
| | 4 - Re-establish flow line |
| | 5 - Repair dead furrow where present |
| | 6 - Farm road berm removal |
| | 7 - Erosion control measures |
| | 8 - Re-establish flow line |
| | 9 - Fill removal & smoothing along edge |
| | Selected flow line |



0    100    200

Feet

N



## Work Area: 7
### Tehama County, California

**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

 Selected flow line





0    100    200

Feet

N

**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

 Selected flow line







0    100    200

Feet

N



**Work Area**

 1 - Re-establish flow line

 2 - Re-establish flow line

 3 - Repair erosion gully

 4 - Re-establish flow line

 5 - Repair dead furrow where present

 6 - Farm road berm removal

 7 - Erosion control measures

 8 - Re-establish flow line

 9 - Fill removal & smoothing along edge

—— Selected flow line




0   100   200
Feet




N