JONATHAN D. BRIGHTBILL
Acting Assistant Attorney General
ERIC GRANT
Deputy Assistant Attorney General
ANDREW J. DOYLE
JOHN THOMAS H. DO
ANDREW S. COGHLAN
United States Department of Justice
Environmental and Natural Resources Division
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 514-4427 (Doyle)

McGREGOR W. SCOTT
United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2780

*Attorneys for the United States*

CANNATA, O'TOOLE, FICKES & OLSON LLP
THERESE Y. CANNATA
MARK P. FICKES
ZACHARY E. COLBETH
100 Pine Street, Suite 350
San Francisco, CA 94111
Telephone: 415.409.8900 / Facsimile: 415.409.8904

*Attorneys for Roger J. LaPant, Jr.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>v.<br><br>ROGER J. LAPANT, JR.,<br><br><br>       Defendant. | Case No. 2:16-cv-01498-KJM-DB<br><br>**CONSENT DECREE AND SETTLEMENT BETWEEN THE UNITED STATES AND ROGER J. LAPANT, JR.** |

This Consent Decree and Settlement is between Plaintiff United States of America ("Plaintiff" or "United States"), on the one hand, and Defendant Roger J. LaPant, Jr. ("Defendant" or "Mr. LaPant"), on the other. [1] (*See infra* Paragraph 9 for definitions of "Consent Decree," its "Effective Date," the "Parties" to this Consent Decree, and other relevant definitions.)

## RECITALS

WHEREAS the United States has filed a Complaint in this action alleging that Mr. LaPant, Goose Pond Ag, Inc., and Farmland Management Services violated the Clean Water Act ("CWA") section 301(a), 33 U.S.C. § 1311(a);

WHEREAS the United States alleges in the Complaint:

- in the first count, that Mr. LaPant's alleged CWA violations resulted from operations occurring between approximately July, 2011, and March, 2012, on real property ("Tehama North Site") near Ohm Road, Paskenta Road, and the main stem of Coyote Creek in Tehama County, California;

- in the second count, that Goose Pond Ag, Inc.'s and Farmland Management Services' alleged CWA violations resulted from operations beginning approximately November, 2012, on the Tehama North Site;

- that each set of operations resulted in the unauthorized discharge of dredged or fill material into "waters of the United States" that are hydrologically and ecologically connected to Coyote Creek and the Sacramento River; and

- the United States requests that the Court award injunctive relief and civil penalties;

WHEREAS on June 10, 2019, the Court entered a Consent Decree between the United States, on the one hand, and Goose Pond Ag, Inc. and Farmland Management Services, on the other (ECF No. 106), which resolved the Complaint as to those defendants;

---

[1] On November 15, 2019, the Court approved the United States' and Mr. LaPant's stipulation to delete "J&J Farms" as a separate, named defendant (ECF No. 111).

WHEREAS Mr. LaPant filed an Answer to the United States' Complaint (ECF No. 18).

WHEREAS Mr. LaPant denies any and all liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, during discovery, Mr. LaPant submitted evidence to the United States regarding limits to his ability to pay and cash flow;

WHEREAS the Parties recognize that this Consent Decree has been negotiated in good faith and will avoid further litigation among the Parties, and the Court by approving and entering this Consent Decree finds that it is fair, reasonable, and in the public interest; and

THEREFORE, before the taking of any trial testimony, and without the adjudication or admission of any issue of fact or law except as provided in Section I of this Consent Decree, and with the consent of the Parties by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. JURISDICTION, VENUE, AND SUFFICIENCY OF COMPLAINT

1. This Court has jurisdiction over the subject matter of the Complaint pursuant to at least 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the Eastern District of California pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c).

3. For purposes of this Consent Decree, including any related enforcement action arising under this Consent Decree, Mr. LaPant consents to personal jurisdiction and venue.

4. For purposes of this Consent Decree, including any action to enforce this Consent Decree, the Parties agree (without Mr. LaPant admitting any liability), and the Court finds, that the Complaint states claims upon which relief sufficient to grant relief pursuant to CWA sections 301(a) and 309(d), 33 U.S.C. §§ 1311(a) and 1319(d).

## II. APPLICABILITY

5. This Consent Decree applies to and is binding upon the United States, and it also applies to and is binding upon Mr. LaPant and any agents, successors, assigns, or other persons otherwise bound by law whether or not such person has notice of this Consent Decree.

6. To the extent that Mr. LaPant contracts with any person to perform all or part of any obligation set forth in this Consent Decree, or to conduct activities that could, if performed in a certain manner, be contrary to Mr. LaPant's obligations under this Consent Decree, Mr. LaPant shall condition any such contract upon performance that conforms to the terms of this Consent Decree.

7. In any action to enforce this Consent Decree, Mr. LaPant shall not raise as a defense the failure by of his employees, agents, contractors, or consultants to take any actions necessary to comply with this Consent Decree.

## III. **DEFINITIONS**

8. Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall, unless otherwise provided in this Consent Decree, have the meanings assigned to them in the CWA or such regulations that were in effect at the time of Mr. LaPant's alleged CWA violations on the Tehama North Site in 2011 and 2012.

9. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "**Balance of the Rawson Road Site**" shall mean all areas of the Rawson Road Site except for (i.e., exclusive of) that site's Conservation Reserve (i.e., the Rawson Road Conservation Reserve).

b. "**Bangor Site**" shall mean the real property, currently owned or controlled by Mr. LaPant, comprising approximately one thousand one hundred eight two (1182) acres and located in Butte County, California, generally bounded by Palermo Honcut Highway to the west, Oroville Bangor Highway to the east, and Laporte Road to the south, and located southeast of Chico, California. The northeastern parcels of the Bangor Site (028-200-001-000 and 028-200-003-000) are bisected by Dunstone Drive and located northwest of North Honcut Creek. The southern parcels of the Bangor Site (028-270-004-000, 028-270-005-000, 028-430-017-000, 028-430-018-000, and 028-270-007-000) is located north of Bangor Park Road, east of Dunstone Drive and south of North Honcut Creek. The Bangor Site is currently associated with Assessor Parcel Numbers 028-200-001-000, 028-200-003-000, 028-270-004-000, 028-270-005-000, 028-

430-017-000, 028-430-018-000, and 028-270-007-000.  The Bangor Site is shown in Appendix A (pages marked A-1 and A-2) to this Consent Decree, which is attached hereto.

c.      "**Bangor Conservation Reserve**" shall mean an area of approximately 204 acres within the Bangor Site as shown in Appendix A.

d.      "**Complaint**" shall mean the complaint filed by the United States in this action on June 30, 2016 (ECF No. 1).

e.      "**Complete Information**" shall mean all information relevant to the matter at hand, as determined by the Corps, which may be informed by the Corps' list of information relevant to, as applicable, an individual permit application, pre-construction notice, letter of permission, or aquatic resource delineation reports.  *See, e.g.*, https://www.spk.usace.army.mil/Portals/12/documents/regulatory/pdf/LOP-procedures9-16-2013FINAL(rev).pdf; https://www.spk.usace.army.mil/Portals/12/documents/regulatory/pdf/IP_Info.pdf; https://www.spk.usace.army.mil/Portals/12/documents/regulatory/nwp/2017_nwps/Information_Needed_for_Complete_PCN_CA_NV_UT.pdf?ver=2017-03-27-131306-060; https://www.spk.usace.army.mil/Portals/12/documents/regulatory/nwp/2017_nwps/SPD_NWP_PCN_with_SPK_Attachment_3_CA%20FINAL.pdf?ver=2017-09-06-172225-737; https://www.spk.usace.army.mil/Portals/12/documents/regulatory/jd/minimum-standards/Minimum_Standards_for_Delineation_with_Template-final.pdf; https://www.spd.usace.army.mil/Missions/Regulatory/Public-Notices-and-References/Article/651327/updated-map-and-drawing-standards/.

f.      "**Consent Decree**" shall mean the present document, including the version that the United States has lodged with the Court containing only the Parties' signatures, as well as the subsequent version that the Clerk of the Court files containing the Court's signature (upon the Court's approval and entry of the Consent Decree).  To the extent that this Consent Decree also constitutes or contains a Settlement Agreement and Release, it shall be so construed.

g.      "**Corps**" shall mean the United States Army Corps of Engineers and any of its successor departments or agencies.  Unless the context shows otherwise, all references to the United States herein shall include the Corps.

h.      "**Day**," whether or not capitalized, shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

i.      "**Effective Date**" shall mean the date on which this Consent Decree is approved and entered by the Court.

j.      "**Parties**" shall mean the United States and Roger J. LaPant, Jr.

k.      "**Rawson Road Site**" shall mean the real property, currently owned or controlled by Mr. LaPant, comprising approximately nine hundred and forty four (944) acres and located in Tehama County, California, west of Interstate Highway 5, north of Gyle Road, and south of Redding, California.  The Rawson Road Site is generally bounded on the east by Rawson Road and Tehama Avenue to the north and McClure Creek and Elder Creek are north and south of the Rawson Road Site respectively.  The Rawson Road Site is currently associated with Assessor Parcel Numbers 063-170-027-000, 063-170-025-000, 063-170-002-000, 063-170-028, and 063-170-026-000.  The Rawson Road Site is shown on Appendix C to this Consent Decree, which is attached hereto.

*l.*      "**Rawson Road Conservation Reserve**" shall mean an area of approximately 243.32 acres within the Rawson Road Site that is shown on Appendix C.  In addition to a map, Appendix C contains a legal description of the Rawson Road Conservation Reserve.

m.      "**Tehama North Site**" shall mean the real property, previously but not currently owned or controlled by Mr. LaPant, comprising approximately one thousand five hundred five (1,505) acres and located in rural Tehama County, California, just south of the city of Red Bluff and due west of Interstate Five (5).  The Tehama North Site is generally bounded on the north by Ohm Road (which may also be known as Rawson Avenue), on the south by the

main stem of Coyote Creek, on the west by Paskenta Road, and on the east by Rawson Road. As of September 2018, the Tehama North Site is associated with Assessor Parcel Numbers 037-020-01, -03, -04, -023, -024, -025, and -026. The Tehama North Site is labeled as such on Appendix 1 to the Consent Decree between the United States, Goose Pond Ag, Inc. and Farmland Management Services (ECF No. 106).

## IV. <u>SCOPE, EFFECT, AND RESERVATION OF RIGHTS</u>

10.     This Consent Decree resolves and shall constitute a complete and final settlement of the civil claims of the United States alleged in the first count of the Complaint, subject to Mr. LaPant's compliance with this Consent Decree.

11.     Further, the United States covenants not to take civil judicial or administrative enforcement action alleging violations of the CWA section 404 program, 33 U.S.C. § 1344, against Mr. LaPant with respect to any discharges of dredged or fill material to waters of the United States that he has, as of the Effective Date of this Consent Decree, made on the Rawson Road Site. This covenant does not alter or diminish Mr. LaPant's obligation to comply with this Consent Decree. Although Mr. LaPant denies any CWA liability arising out of his activities on the Rawson Road Site, and the United States preserves its position that Mr. LaPant's activities on the Rawson Road Site may have resulted in CWA violations and were not exempt under CWA section 404, the Parties have entered into this Consent Decree and to avoid the time, expense, and uncertainty of any litigation involving alleged violations of the CWA section 404 program, 33 U.S.C. § 1344, with respect to such potential claims. Mr. LaPant represents and warrants that his activities on the Rawson Road Site have not changed, and will not change, in any material way since December 11, 2018, through the Effective Date of this Consent Decree. For example, Mr. LaPant represents and warrants that he has used only the same or substantially similar equipment in any given location that he had used in such location prior to December 11, 2018. Mr. LaPant acknowledges that the United States is relying on his representation and warranty, and if subsequently discovered evidence demonstrates the inaccuracy of his representation and warranty, it shall be treated as non-compliance with this Consent Decree.

12. It is the express purpose of the Parties in entering this Consent Decree to further the objectives set forth in CWA section 101, 33 U.S.C. § 1251.

13. This Consent Decree is not and shall not be interpreted to be a permit, or modification of any permit, under any federal, state, or local laws or regulations. Mr. LaPant is responsible for compliance with all applicable federal, state, and local laws, regulations, and permits; and Mr. LaPant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth in this Consent Decree. Further, in any future CWA permit application, Mr. LaPant may not rely upon any provision in this Consent Decree (e.g., the preservation and compensatory mitigation obligations of this Consent Decree) as part of any future avoidance and minimization measures demonstration or part of any future compensatory mitigation proposal.

14. Nothing in this Consent Decree shall limit the ability of the Corps to issue, modify, suspend, revoke, or deny any individual permit or any nationwide or regional general permit under CWA section 404, 33 U.S.C. § 1344, nor shall this Consent Decree limit the United States Environmental Protection Agency's ability to exercise its authority pursuant to CWA section 404(c), 33 U.S.C. § 1344(c). Further, except for the terms of this Consent Decree related to the Bangor Conservation Reserve or the Rawson Road Conservation Reserve, nothing in this Consent Decree shall limit Mr. LaPant's ability to apply for and be granted any individual permit or to invoke any applicable nationwide or regional general permit under CWA section 404, 33 U.S.C. § 1344.

15. The United States reserves all legal and equitable rights and remedies available to enforce this Consent Decree and applicable law, except as expressly stated in Paragraphs 10 and 11 of this Consent Decree. By the same token, Mr. LaPant reserves all legal and equitable rights and remedies in defending against claims of noncompliance with this Consent Decree, except as expressly stated in Paragraphs 10 and 11 of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain remedies under the CWA or its implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraphs 10 and 11 of this Consent Decree. And similarly, this

Consent Decree shall not be construed to limit the rights of Mr. LaPant in defending against such exercise by the United States, except as expressly stated in Paragraphs 10 and 11 of this Consent Decree.

## V. <u>REMEDIAL PROVISIONS</u>

### A. <u>CIVIL PENALTY</u>

16.     Within one hundred eighty (180) Days of the Effective Date of this Consent Decree, Mr. LaPant shall pay a civil penalty to the United States in the amount of two hundred fifty thousand dollars ($250,000).

17.     Payment to the United States shall be made in accordance with written instructions to be provided to Mr. LaPant by the United States Department of Justice following entry of this Consent Decree.  Promptly upon payment, Mr. LaPant shall provide written notice thereof to the United States at the addresses specified in Section XI of this Consent Decree.

18.     Mr. LaPant shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section X in calculating any federal income tax owed.

### B. <u>INJUNCTIVE RELIEF</u>

19.     <u>Preservation of Aquatic Resources and Buffers.</u>

    a.     <u>Permanent Preservation of the Rawson Road Conservation Reserve.</u>  Mr. LaPant and his agents, successors, and assigns and all persons having actual or constructive notice of this Consent Decree are permanently enjoined from disturbing, and shall not disturb, the Rawson Road Conservation Reserves by any dredging, filling, land clearing, tillage, farming activities (including the preparation, maintenance, or operation of areas for the production of crops or trees), construction work, earthmoving activities, or any pollutant discharge.  (The foregoing are but examples of prohibited disturbance, and these examples may be overlapping in their meaning.)

        i.     Notwithstanding Paragraph 19.a., this Consent Decree does not prohibit Mr. LaPant (or his agents, successors, and assigns) from using the Rawson Road Conservation Reserve for lawful hunting activities and moderate non-irrigated cattle grazing and the following associated activities:  above-ground, non-toxic measures to control for weeds,

pests, and invasive species; cattle corrals, for loading and unloading cattle outside of aquatic areas; use of gates, fencing, and earthen farm roads that currently exist in the Rawson Road Conservation Reserve; and construction of a firebreak, if required by State or County government or by insurance carrier, outside of aquatic areas. Nor does this Consent Decree prohibit Mr. LaPant from using the Rawson Road Conservation Reserve for additional activities associated with and necessary to conduct moderate non-irrigated cattle grazing (such as installation and/or maintenance of T-posts or similar fencing, installation of above-ground water sources, and placement of additional earthen access roads for ingress and egress to/from cattle corrals), provided that Mr. LaPant first submits a plan with Complete Information about the intended additional activities, including their location and impact if any on aquatic areas, to the Corps for its review and approval, which approval shall not be unreasonably withheld. If disputes arise, Mr. LaPant shall refrain from initiating or conducting any of the intended additional activities until after the completion of any judicial review (or other binding resolution of the dispute).

ii.    Notwithstanding Paragraph 19.a., Mr. LaPant may install an irrigation pipeline system through activities consistent with, and in the locations as shown in, Appendix B to this Consent Decree, which is attached hereto. The mere installation of the irrigation pipeline system (or other activities, as noted below in subparagraphs iii through v) shall not be construed as any kind of position by the United States regarding whether future activities associated with this system (other than its installation in accordance with Appendix B) comply with this Consent Decree.

iii.    Notwithstanding Paragraph 19.a., this Consent Decree does not prohibit Mr. LaPant (or his agents, successors, and assigns) from conducting minimally intrusive and routine or minor maintenance and repairs of the roads, pipeline, and other supporting infrastructure for the irrigation system, provided that none of those activities occurs in any aquatic area (including, but not limited to, all areas shown in Appendix B where the pipeline will be elevated above the surface of the ground).

iv.     Notwithstanding Paragraph 19.a., this Consent Decree does not prohibit Mr. LaPant (or his agents, successors, and assigns) from conducting other minimally intrusive (but not routine or minor) maintenance and repairs of the roads, pipeline, and other supporting infrastructure for the irrigation system, necessary major maintenance and repairs of the roads, pipeline, and other supporting infrastructure for the irrigation system, provided that Mr. LaPant first submits a plan with Complete Information about the intended additional activities, including a demonstration of their necessity, location, and impact if any on aquatic areas, to the Corps for its review and approval, which approval shall not be unreasonably withheld.  If disputes arise, Mr. LaPant shall refrain from initiating or conducting any of the intended additional activities until after the completion of any judicial review (or other binding resolution of the dispute).

v.     Notwithstanding Paragraph 19.a., this Consent Decree does not prohibit Mr. LaPant (or his agents, successors, and assigns) from establishing overhead power access for the pump station that is shown on Appendix B, provided that Mr. LaPant first submits a plan with Complete Information about the intended additional activities, including a demonstration of their necessity, location, and impact if any on aquatic areas, to the Corps for its review and approval, which approval shall not be unreasonably withheld.  If disputes arise, Mr. LaPant shall refrain from initiating or conducting any of the intended additional activities until after the completion of any judicial review (or other binding resolution of the dispute).

b.     <u>Long-term Preservation of the Bangor Conservation Reserve</u>.  Mr. LaPant and his agents, successors, and assigns and all persons having actual or constructive notice of this Consent Decree are enjoined for a period of twenty (20) years from the Effective Date of this Consent Decree from disturbing, and shall not disturb, the Bangor Conservation Reserve by any dredging, filling, land clearing, tillage, farming activities (including the preparation, maintenance, or operation of areas for the production of crops or trees), construction work, earthmoving activities, or any pollutant discharge.  (The foregoing are but examples of prohibited disturbance, and these examples may be overlapping in their meaning.)

i. Notwithstanding Paragraph 19.b., this Consent Decree does not prohibit Mr. LaPant (or his agents, successors, and assigns) from using the Bangor Conservation Reserve for lawful hunting activities and moderate non-irrigated cattle grazing and the following associated activities: above-ground, non-toxic measures to control for weeds, pests, and invasive species; cattle corrals, for loading and unloading cattle outside of aquatic areas; use of gates, fencing, and earthen farm roads that currently exist in the Bangor Conservation Reserve; and construction of a firebreak, if required by State or County government or by insurance carrier, outside of aquatic areas. Nor does this Consent Decree prohibit Mr. LaPant from using the Bangor Conservation Reserve for additional activities associated with and necessary to conduct moderate non-irrigated cattle grazing (such as installation and/or maintenance of T-posts or similar fencing, installation of above-ground water sources, and placement of additional earthen access roads for ingress and egress to/from cattle corrals), provided that Mr. LaPant first submits a plan with Complete Information about the intended additional activities, including their location and impact if any on aquatic areas, to the Corps for its review and approval, which approval shall not be unreasonably withheld. If disputes arise, Mr. LaPant shall refrain from initiating or conducting any of the intended additional activities until after the completion of any judicial review (or other binding resolution of the dispute).

20. <u>Restrictions regarding Property Transfers</u>. The obligations and rights of Paragraph 19 of this Consent Decree shall run with the land and bind Mr. LaPant's successors and assigns and any person with actual or constructive notice of them, and shall be enforceable by the United States (by any appropriate legal proceeding, including but not limited to enforcement of this Consent Decree). No transfer of ownership or control of (or transfer of any less-than-fee-simple interest in) the Rawson Road Conservation Reserve or the Bangor Conservation Reserve; any portion of either Conservation Reserve; the Rawson Road Site or the Bangor Site; or any portion of the Rawson Road Site or Bangor Site shall relieve Mr. LaPant of any of his obligations in this Consent Decree. As a condition of any such transfer, Mr. LaPant shall reserve all rights necessary for him to comply with this Consent Decree. At the time of such transfer, Mr. LaPant shall provide a copy of this Consent Decree to the transferee, shall

obtain the transferee's acknowledgement thereof, and shall provide written notice of the transfer and a copy of such acknowledgement to the United States at the addresses specified in Section XI of this Consent Decree. Any attempted or actual transfer of property without complying with this Paragraph constitutes a violation of this Consent Decree. If disputes arise, Mr. LaPant shall refrain from attempting to transfer or transferring the property until after the completion of any judicial review (or other binding resolution of the dispute).

21. _Recording of Deed Restrictions_. Within fifteen (15) Days of the Effective Date of this Consent Decree, Mr. LaPant shall finalize and record the draft deed restrictions for the Rawson Road Conservation Reserve and the Bangor Conservation Reserve, which include, *inter alia*, legal descriptions and professional surveys of the Conservation Reserve boundaries. The draft deed restriction for the Rawson Road Conservation Reserve is Appendix D to this Consent Decree, which is attached hereto. The draft deed restriction for the Bangor Conservation Reserve is Appendix E to this Consent Decree, which is attached hereto. The final and recorded deed restriction for the Rawson Road Conservation Reserve shall have the objective of preserving the Rawson Road Conservation Reserve in perpetuity as a purely natural area consistent with Paragraphs 19 and 20 of this Consent Decree, and it shall provide the United States with enforcement rights. The final and recorded deed restriction for the Bangor Conservation Reserve shall have the objective of preserving the Bangor Conservation Reserve for a period of twenty (20) years from the Effective Date of this Consent Decree as a purely natural area consistent with Paragraphs 19 and 20 of this Consent Decree, and it shall provide the United States with enforcement rights for a period of twenty (20) years. Within fifteen (15) Days of finalization and recording of the deed restrictions, Mr. LaPant shall provide written notice to the United States of such recording, along with a true and correct copy of the recorded instruments, at the addresses specified in Section XI of this Consent Decree. Each deed, title, conservation easement, or other instrument conveying an interest in the Rawson Road Conservation Reserve shall reference its deed restriction. For a period of twenty (20) years from the Effective Date of this Consent Decree, each deed, title, conservation easement, or other

instrument conveying an interest in the Bangor Conservation Reserve shall reference the recorded location of its deed restriction.

22.     Use of the Balance of the Rawson Road Site.

        a.     From the Effective Date of this Consent Decree until its Termination in accordance with Paragraph 54 of this Consent Decree, except as provided in subparagraphs b through g below in this Paragraph (Paragraph 22), Mr. LaPant and his agents, successors, and assigns shall, before initiating or conducting any dredging, filling, land clearing, tillage, farming activities, construction work, earthmoving activities, or any pollutant-discharge activities in the Balance of the Rawson Road Site, comply with this "preclearance" provision.  This means that Mr. LaPant shall provide written notification and Complete Information to the Corps regarding the proposed activities (including their impacts to putative waters of the United States) and shall obtain from the Corps:  (1) a written determination that no CWA section 404 permit is required for the proposed activities; or (2) a written verification of the applicability of a nationwide or regional CWA section 404 permit; or (3) an individual CWA section 404 permit.  If disputes arise, Mr. LaPant shall refrain from initiating or conducting any of the proposed activities until after the completion of any judicial review (or other binding resolution of the dispute).

        b.     This Consent Decree does not prohibit Mr. LaPant (and his agents, successors, and assigns) from undertaking lawful hunting activities and moderate non-irrigated cattle grazing and the following associated activities in the Balance of the Rawson Road Site: above-ground, non-toxic measures to control for weeds, pests, and invasive species; cattle corrals, for loading and unloading cattle outside of aquatic areas; use of gates, fencing, and earthen farm roads that currently exist in the Balance of the Rawson Road Site; and construction of a firebreak, if required by State or County government or by insurance carrier, outside of aquatic areas.  So long as Mr. LaPant does nothing more than undertake the foregoing activities in the Balance of the Rawson Road Site, subparagraph a (preclearance), above, shall not apply. This Consent Decree also does not prohibit Mr. LaPant from using the Balance of the Rawson Road Site for additional activities associated with and necessary to conduct moderate non-irrigated cattle grazing (such as installation and/or maintenance of T-posts or similar fencing,

placement of above-ground water sources, and placement of earthen access roads for ingress and egress to/from cattle corrals), provided that Mr. LaPant first submits a plan with Complete Information about the intended additional activities, including their location and impact if any on aquatic areas, to the Corps for its review and approval, which approval shall not be unreasonably withheld. If disputes arise, Mr. LaPant shall refrain from initiating or conducting any of the proposed activities until after the completion of any judicial review (or other binding resolution of the dispute).

        c.      This Consent Decree does not prohibit Mr. LaPant (and his agents, successors, and assigns) from continuing to cultivate the almond and walnut orchard currently planted in the portion of the Balance of the Rawson Road Site as indicated on Appendix F to this Consent Decree, which is attached hereto. "Cultivate" for purposes of this subparagraph includes only fertilization, pollination, irrigation, harvesting, minor smoothing of the existing orchard floor with a homemade floater or small scrape box to facilitate almond and walnut collection, pruning, crop protection, removing and replacing nonproducing, diseased, or damaged trees, and other similar activities reasonably related to producing an annual almond and walnut crop from the orchard. "Cultivate" for purposes of this subparagraph does not include: (1) land leveling (with laser technology or otherwise) or similar earth-moving activities that alter topography and hydrology; (2) operation of a slip plow or other deep-ripping equipment; or (3) redistribution of earthen materials (beyond minor smoothing of the existing orchard floor to facilitate almond and walnut collection) by blading, grading, or other means in fill in any area of waters of the United States. Mr. LaPant represents and warrants that the almond and walnut orchard as indicated on Appendix F has not been expanded since December 11, 2018. Mr. LaPant acknowledges that the United States is relying on his representation and warranty, and if subsequently discovered evidence demonstrates the inaccuracy of his representation and warranty, it shall be treated as non-compliance with this Consent Decree. So long as Mr. LaPant does nothing more than cultivate the almond and walnut orchard currently planted in the Balance of the Rawson Road Site as indicated on Appendix F, subparagraph a (preclearance), above, shall not apply. However, if and to the extent that Mr. LaPant wishes to expand the acreage of

the almond and walnut orchard outside the boundary indicated on Appendix F, subparagraph a (preclearance), above, shall apply. Similarly, if and to the extent that Mr. LaPant wishes to engage in activities that are not cultivating as defined above, subparagraph a (preclearance), above, shall apply.

        d.      This Consent Decree does not prohibit Mr. LaPant (and his agents, successors, and assigns) from continuing to farm dryland (i.e., non-irrigated) wheat in the portion of the Balance of the Rawson Road Site as indicated on Appendix F to this Consent Decree, which is attached hereto. "Farm dryland wheat" for purposes of this subparagraph includes only: the preparing the soil for the planting of dryland wheat crop; the sowing of seeds and placement of seedlings to produce dryland wheat crop; harrowing; crop protection; removal of dryland wheat crop; bailing; stacking; and similar activities reasonably related to producing a dryland wheat crop. "Farm dryland wheat" for purposes of this subparagraph does not include: (1) activities that are intended to immediately or gradually convert an area toward an orchard use; (2) land leveling (with laser technology or otherwise) or similar earth-moving activities that alter topography and hydrology; (3) activities that constitute or could reasonably be found to constitute ripping or deep ripping; or (4) redistribution of earthen materials by blading, grading, or other means to fill in any area of waters of the United States. Mr. LaPant represents and warrants that the dryland wheat area as indicated on Appendix F has not been expanded since December 11, 2018. Mr. LaPant acknowledges that the United States is relying on his representation and warranty, and if subsequently discovered evidence demonstrates the inaccuracy of his representation and warranty, it shall be treated as non-compliance with this Consent Decree. So long as Mr. LaPant does nothing more than continue to farm dryland wheat in the area of the Balance of the Rawson Road Site as indicated on Appendix F, subparagraph a (preclearance), above, shall not apply. However, if and to the extent that Mr. LaPant wishes to expand the acreage of the dryland wheat area outside the boundary indicated on Appendix F, subparagraph a of Paragraph 22 (preclearance), above, shall apply. Similarly, if and to the extent that Mr. LaPant wishes to engage in activities that are not farming dryland wheat as defined above in the area indicated on Appendix F, subparagraph a (preclearance), above, shall apply.

e.     Subparagraph a (preclearance), above, shall not apply to the following features shown on Appendix F: "Home," "Equipment Storage," and "Pump House-Container Parts."

f.     Subparagraph a (preclearance), above, shall not apply to Mr. LaPant's installation of an irrigation pipeline system consistent with, and in the locations as shown in, Appendix B to this Consent Decree.[2]

g.     At any time after the Effective Date of this Consent Decree, Mr. LaPant and his agents, successors, and assigns may, with respect to the Balance of the Rawson Road Site only (i.e., not the Rawson Road Conservation Reserve or the Bangor Conservation Reserve), seek from the Corps a CWA jurisdictional determination (which may include a wetland delineation). If Mr. LaPant does so, he shall provide Complete Information to the Corps. In making such jurisdictional determination, the Corps shall apply the then-applicable definition of "waters of the United States" and shall otherwise act in accordance with then-governing law. Further, the Corps shall not unreasonably delay or withhold completion of its determination. Upon receipt of a final CWA jurisdictional determination from the Corps, and the completion of any judicial review, Mr. LaPant and his agents, successors, and assigns may conduct any activities in the Balance of the Rawson Road Site that are otherwise consistent with then-governing law in areas determined by such jurisdictional determination (as may be modified on judicial review thereof) not to be "waters of the United States." Further, as to those areas (i.e., areas within the Balance of the Rawson Site determined by such final jurisdictional determination not to be "waters of the United States"), Paragraph 22.a. through 22.d. above shall cease being applicable to those non-jurisdictional areas within the Balance of the Rawson Road Site.

23.     Compensatory Mitigation.

---

[2] New farming operations in the Balance of Rawson Road Site shall be subject to all terms and conditions of this Consent Decree.

a. Within sixty (60) Days of the Effective Date of this Consent Decree, Mr. LaPant shall purchase a total of ten (10) credits from the Dove Ridge Conservation Bank. Within fourteen (14) Days of the said purchase, Mr. LaPant shall present written proof of said purchase, along with a written verification of same by the Dove Ridge Conservation Bank, to the United States at the addresses specified in Section XI of this Consent Decree.

b. Within one hundred eighty (180) Days of the Effective Date of this Consent Decree, Mr. LaPant shall submit to the Corps for its review and approval, which shall not be unreasonably withheld, a written proposal for the expenditure of one hundred thousand dollars ($100,000) to purchase vernal pool establishment, re-establishment, or rehabilitation credits from one or more Corps-approved mitigation banks that serve the area encompassing the Tehama North Site. To the extent that insufficient credits exist at such local banks, Mr. LaPant may propose to expend the remaining funds to purchase vernal pool establishment, re-establishment, or rehabilitation credits (or their functional equivalent) from nearby Corps-approved mitigation banks or from the National Fish and Wildlife Foundation's In Lieu Fee Program for the Northwestern Sacramento Valley Vernal Pool Service Area.

c. Within thirty (30) Days of the Corps' approval of the written proposal required by subsection (b) above, Mr. LaPant shall effect off-site compensatory mitigation by completing the total expenditure of no more and no less than one hundred thousand dollars ($100,000) in accordance with the Corps' approval under Paragraph 23.b. above, and by providing written proof of such purchase to the United States at the addresses specified in Section XI of this Consent Decree.

## VI. SUBMISSIONS

24. As provided in this Consent Decree, following its Effective Date, Mr. LaPant is required to provide certain submissions to the United States, such as compensatory mitigation as set forth in Paragraphs 23.a. and 23.b. above. For these and any other submissions to the United States required of Mr. LaPant under this Consent Decree, Mr. LaPant shall include a certification to the effect of the following: "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system

designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

25. The notification or submission requirements of this Consent Decree do not relieve Mr. LaPant of any reporting obligations otherwise required by federal, state, or local law, regulation, permit, or other requirement.

26. Any information provided by or on behalf of any party pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII. **RETENTION OF RECORDS AND ACCESS**

27. Through the termination of this Consent Decree pursuant to Paragraph 54 below, Mr. LaPant shall retain, and shall instruct his contractors, consultants, and other agents to preserve, all non-identical copies of all documents, records, or other information (including electronically stored information) in their or their contractors' or other agents' possession or control, or that come into their contractors' or other agents' possession or control, and that relate in any manner to Mr. LaPant's performance of his obligations under this Consent Decree. At any time during this information-retention period, upon request by the United States, Mr. LaPant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph. If Mr. LaPant asserts that any information is protected from disclosure under any privilege or protection recognized by federal law, and the United States disputes such assertion, the dispute may be resolved in accordance with Section VIII of this Consent Decree. As noted at the outset of this Paragraph, this record retention obligation terminates with the Consent Decree. Upon a showing of good cause, and prior to the Termination Date (Paragraph 54), the United States may apply to the Court to extend the records retention period.

28.     Subject to Paragraphs 54 and 55 of this Consent Decree, the United States, including its contractors and/or consultants, shall have the right to access the Bangor Conservation Reserve, the Rawson Road Conservation Reserve, and the Balance of the Rawson Road Site, with reasonable advance written notice, in order to assess compliance with this Consent Decree, including (a) assessing aquatic areas and upland buffers; (b) verifying any data or information submitted by or on behalf of Mr. LaPant; and (c) obtaining evidence (e.g., photographs and soil samples with hand augers).  If the United States wishes its access to last for more than two consecutive days, or if the United States wishes to use mechanized equipment (rather than just hand augers) during its access, the United States must seek and obtain either Mr. LaPant's written consent or, if contested, leave of Court with a showing of good cause.  Nothing in this Consent Decree is intended to alter otherwise governing law of premises liability.

29.     This Consent Decree in no way limits or affects the United States' or the Corps' otherwise existing rights of entry and inspection or any right to obtain information under applicable law, nor does it limit or affect any otherwise existing duty or obligation of Mr. LaPant to maintain documents, records, or other information.  Likewise, Mr. LaPant reserves all rights to object to such entries and inspections.

## VIII.  **DISPUTE RESOLUTION**

30.     Unless otherwise expressly provided for in this Consent Decree, the Parties shall attempt to resolve any and all disputes arising under or with respect to this Consent Decree through the dispute resolution procedures of this Section ("Dispute Resolution").

31.     A dispute shall be considered to have arisen when a written Notice of Dispute is transmitted to the opposing party at the addresses specified in Section XI.  Such Notice of Dispute shall state clearly the matter in dispute.

32.     If after 30 Days of transmittal of the Notice of Dispute, the complainant concludes that the Parties have reached an impasse, then the complainant may seek resolution of the dispute by the Court.  The Parties may continue to attempt to resolve the Notice of Dispute while the matter is pending before the Court.  Although "the Court" for purposes of this Consent Decree means The Honorable Kimberly J. Mueller or any subsequently-assigned United States District

Judge, the Parties consent to Dispute Resolution by United States Magistrate Judge Kendall J. Newman, given his familiarity with this matter, if and to the extent that he is available and willing to adjudicate any given dispute when it is presented. If Judge Newman is not available and willing to adjudicate any given dispute when it is presented, Dispute Resolution would be handled by Chief Judge Mueller or any subsequently-assigned United States District Judge.

33. The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Mr. LaPant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties and interest, if applicable to the disputed matter, shall continue to accrue from the first Day of violation, but payment shall be stayed pending resolution of the dispute as provided in Section X of this Consent Decree. If Mr. LaPant does not prevail on the disputed issue, stipulated penalties and interest, if applicable, shall be assessed and paid as provided in Section X of this Consent Decree. If determined by the Court that Mr. LaPant did not violate the Consent Decree, no penalty or interest shall be assessed under Section X of this Consent Decree.

## IX. FORCE MAJEURE

34. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Mr. LaPant, of any person controlled by Mr. LaPant, or of Mr. LaPant's contractors or consultants that delays or prevents the performance of any obligation under this Consent Decree despite Mr. LaPant's best efforts to fulfill the obligation.

35. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Mr. LaPant shall provide notice to the United States, at the addresses specified in Section XI, within a reasonable time after Mr. LaPant first knows or should know that the event might cause a delay. Mr. LaPant shall also provide an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Mr. LaPant's rationale for attributing such delay to a force majeure event if he intends to assert such a defense; and a statement as to whether, in the opinion of Mr.

LaPant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Mr. LaPant shall include with any written notice required by this Section all relevant documentation.

36.     If the United States agrees in writing that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event may be extended for such additional time as may be necessary to complete those obligations under the circumstances.

37.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, or does not agree to the extension of time sought by Mr. LaPant, then Mr. LaPant may invoke Dispute Resolution procedures under Section VIII of this Consent Decree.

38.     If Mr. LaPant invokes Dispute Resolution procedures under Section VIII of this Consent Decree and in doing so, invokes the provisions of Section IX. (Force Majeure), he shall have the burden of demonstrating that the delay or anticipated delay has been or will be caused by a force majeure event; the number of Days of delay or anticipated delay that was or will be caused by such force majeure event; that the duration of the delay or the extension sought was or will be warranted under the circumstances; that he could not have foreseen and prevented such delay; that he exercised best efforts to prevent, avoid, minimize and mitigate the delay and its effects; and that he complied with the requirements of this Section.

## X.  <u>STIPULATED PENALTIES</u>

39.     Mr. LaPant shall be liable for stipulated penalties to the United States for non-compliance with (violations of) this Consent Decree in accordance with this Section, unless excused under Section IX (Force Majeure).  A violation includes but is not limited to failing to perform any obligation required by this Consent Decree within the specified time schedules established by or approved under this Consent Decree.

40.     Stipulated penalties shall accrue for violations of Paragraph 16 of this Consent Decree (Civil Penalty) and Paragraph 23 of this Consent Decree (Compensatory Mitigation) in the amount of five hundred dollars ($500) per Day for each Day that the violation persists.

Stipulated penalties shall accrue for violations of Paragraph 19 of this Consent Decree (Preservation of Aquatic Resources and Buffers, i.e., the Bangor Conservation Reserve and the Rawson Road Conservation Reserve) and Paragraph 21 of this Consent Decree (timely recording deed restrictions for the Bangor Conservation Reserve and the Rawson Road Conservation Reserve) in the amount of one thousand dollars ($1,000) per Day for each Day that the violation persists.

41. For all other violations of this Consent Decree (i.e., not the violations addressed by Paragraph 40, above), there shall be no stipulated penalties until after the United States provides thirty (30) days written notice, which shall include a description of the alleged violation(s) and the action(s) required to cure the violation(s). If Mr. LaPant timely cures the violation(s), no stipulated penalty shall be assessed. But violations that are not cured within thirty (30) Days of the date of notice shall result in a stipulated penalty of seven hundred fifty dollars ($750) per Day for each Day that the violation persists.

42. Except as provided in this Section, Mr. LaPant shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand. Mr. LaPant shall make any such payment in accordance with written instructions to be provided by the United States. Upon such payment, Mr. LaPant shall provide written notice thereof to the United States at the addresses specified in Section XI of this Consent Decree.

43. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

44. Any disputes concerning the amount of stipulated penalties or the underlying violation that gives rise to the assessment of stipulated penalties are subject to the Dispute Resolution provisions of Section VIII. Stipulated penalties disputed by Mr. LaPant and any applicable interest shall continue to accrue as provided in this Consent Decree, but need not be paid until the following:

       a. If the dispute is resolved by agreement between the Parties, Mr. LaPant shall pay the amount due under such agreement, together with any applicable interest, to the United States within thirty (30) Days of the effective date of the agreement.

1    b.  If the dispute is taken to this Court, Mr. LaPant shall pay all accrued

2 penalties determined by the Court to be owing, together with any applicable interest, to the

3 United States within thirty (30) Days of receiving the Court's decision, except as provided by

4 Court order.

5    c.  If any party appeals the Court's decision, Mr. LaPant shall pay all accrued

6 penalties determined to be owing, together with any applicable interest, to the United States

7 within fifteen (15) Days of receiving the final appellate decision.

8   45.  If Mr. LaPant fails to pay stipulated penalties according to the terms of this

9 Consent Decree, he shall be liable for interest on such penalties, as provided for in 28 U.S.C.

10 § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be

11 construed to limit the United States from seeking any remedy otherwise provided by law for Mr.

12 LaPant's failure to pay any stipulated penalties.

13   46.  The payment of stipulated penalties and interest, if any, shall not alter in any way

14 Mr. LaPant's obligation to complete performance of the requirements of this Consent Decree.

15   47.  Stipulated penalties are not the United States' exclusive remedy for violations of

16 this Consent Decree.  Subject to the provisions of Section IV, the United States expressly

17 reserves the right to seek any other relief it deems appropriate for Mr. LaPant's violation of this

18 Consent Decree or applicable law, including but not limited to an action against Mr. LaPant for

19 statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.

20 However, the amount of any statutory penalty assessed for a violation of this Consent Decree

21 shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid

22 pursuant to this Consent Decree.

23      **XI. <u>NOTICES AND COMMUNICATIONS</u>**

24   48.  All notices and communications required under this Consent Decree shall be

25 made to the Parties through each of the following persons and addresses:

26    a.  <u>TO THE UNITED STATES</u>:

27      i.  TO THE DEPARTMENT OF JUSTICE:

28 LETITIA A. GRISHAW
 Chief, Environmental Defense Section

ANDREW J. DOYLE
JOHN THOMAS H. DO
ANDREW S. COGHLAN
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC 20044
andrew.doyle@usdoj.gov
john.do@usdoj.gov
andrew.coghlan@usdoj.gov
DJ # 90-5-1-1-20800

ii.      TO THE CORPS:

A.L. FAUSTINO
District Counsel
U.S. Army Corps of Engineers
Sacramento District
1325 J Street, Room 1440
Sacramento, CA  95814
Al.Faustino@usace.army.mil
Lisa.H.Clay@usace.army.mil

AND

MICHAEL S. JEWELL
Chief, Regulatory Division
U.S. Army Corps of Engineers
Sacramento District
1325 J Street, Room 1440
Sacramento, CA  95814
Michael.S.Jewell@usace.army.mil

b.      <u>TO MR. LAPANT</u>:

THERESE Y. CANNATA
MARK P. FICKES
ZACHARY E. COLBETH
Cannata, O'Toole, Fickes & Olson LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Tel: 415.409.8900  Fax: 415.409.8904
Email: tcannata@cofolaw.com

49.    Any Party may, by written notice to the Parties, change its designated notice recipient or notice address provided above.

50.     Notices submitted pursuant to this Section shall be deemed submitted upon e-mailing and conventional or courier mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII.  COSTS OF SUIT

51.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including reasonable attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Mr. LaPant.

## XIII.  PUBLIC PARTICIPATION

52.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Mr. LaPant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Mr. LaPant in writing that it no longer supports entry of the Decree.

## XIV. MODIFICATION

53.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon the Court's approval.

## XV. TERMINATION

54.     Except as set forth in Paragraph 55 below, this Consent Decree terminates six (6) years following the Effective Date, unless at that time Mr. LaPant is out of compliance with any provision, in which case the Consent Decree does not terminate until Mr. LaPant achieves compliance.  .

55.     Irrespective of Paragraph 54 above, termination of this Consent Decree as a general matter does not extinguish any part of the Rawson Road Conservation Reserve and/or

the Bangor Conservation Reserve, which may be enforced by the United States, through this Consent Decree, administrative proceedings, or court actions. Further, the United States, subject to the terms and conditions set forth in Paragraph 28 herein, shall have a continued right of access to the Rawson Road Conservation Reserve and /or Bangor Conservation Reserve. Accordingly, the Parties consent and agree that the Court retains jurisdiction under the Consent Decree (before and following termination) for enforcement of the Rawson Road Conservation Reserve and/or the Bangor Conservation Reserve.

## XVI.  SIGNATURES/SERVICE

56.     Undersigned representative of the United States Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the party he represents to this document.

57.     This Consent Decree may be signed in counterparts, such counterpart signature pages shall be given full force and effect, and its validity shall not be challenged on that basis.

## XVII.  INTEGRATION

58.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes any prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than Appendices hereto and modifications made effective in accordance with Section XV of this Consent Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XVIII.  FINAL JUDGMENT AND RETENTION OF JURISDICTION

59.     Upon its approval and entry by the Court, this Consent Decree shall constitute a final judgment of the Court as between the United States and Mr. LaPant.  The Parties waive any rights to appeal such final judgment.  Further, upon this Consent Decree's approval and entry, the Parties' cross motions for summary judgment (ECF Nos. 113 & 121) shall be deemed denied as moot.

60.     This Court retains jurisdiction over this action for the purpose of resolving disputes arising under this Consent Decree, or entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XIX.  APPENDICES

61.     The following Appendices are attached to and part of this Consent Decree:

| |
|---|
| Appendix A – Bangor Site and Bangor Conservation Reserve |
| Appendix B – Irrigation Pipeline Project on the Rawson Road Site (including portions of the Rawson Road Conservation Reserve) |
| Appendix C – Rawson Road Site, Rawson Road Conservation Reserve, and Balance of the Rawson Road Site (including map and legal description of Rawson Road Conservation Reserve) |
| Appendix D – Rawson Road Conservation Reserve Deed Restriction |
| Appendix E – Bangor Conservation Reserve Deed Restriction |
| Appendix F – Balance of Rawson Road Site, including: <ul><li>Map of Current Rawson Road Orchard (Almond and Walnut) Farming Operations Present in Balance of Rawson Road Site</li><li>Map of Current Rawson Road Dryland Wheat Farming Operations Present in Balance of Rawson Road Site</li><li>Map of house, grounds, and related outbuildings.</li></ul> |

JONATHAN D. BRIGHTBILL
Acting Assistant Attorney General
ERIC GRANT
Deputy Assistant Attorney General

Dated: ___January 19_____, 2021

_____
ANDREW J. DOYLE
JOHN THOMAS H. DO
ANDREW S. COGHLAN
United States Department of Justice
Environmental and Natural Resources Division
P.O. Box 7611
Washington, DC  20044
Telephone: (202) 514-4427 (Doyle)
andrew.doyle@usdoj.gov

*Attorneys for the United States*

Dated: _Dec 30_ , 2020



ROGER J. LAPANT, JR.

_Approved as to form_

THERESE Y. CANNATA
MARK P. FICKES
ZACH E. COLBETH
Cannata, O'Toole, Fickes & Olson LLP
100 Pine Street, Suite 350
San Francisco, CA 94111
Telephone: (415) 409-8900
tcannata@cofolaw.com

_Attorneys for Roger J. LaPant, Jr._

IT IS SO ORDERED

Dated, entered, and made effective this 30th day of June, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE

# APPENDIX A



LEGEND

⬚ CONSERVATION RESERVE

–·–·– PROPERTY BOUNDARY

APN
028-200-001-000

APN
028-200-001-000

APN
028-200-003-000

APN
028-200-003-000

N

GRAPHIC SCALE
0    400    800
SCALE IN FEET

SITE FEATURES ARE APPROXIMATE: NOT A PRODUCT OF SURVEY.
SOURCE OF BASE MAP: GOOGLE EARTH PROFESSIONAL IMAGE ©2020

**SCS ENGINEERS**
ENVIRONMENTAL CONSULTANTS
3843 BROCKWAY BOULEVARD  SUITE 208
SANTA ROSA, CALIFORNIA
PH. (707) 546–9461    FAX. (707) 544–5789

| | |
|---|---|
| PROJ. NO. | 01216337.00 |
| DATE: | 10/12/2020 |

| DWN. BY: | AAS |
|---|---|
| CHK. BY: | PAW |

| ACAD FILE: | LaPlant_Banfor |
|---|---|
| APP. BY: | PAW |

SHEET TITLE:
CONSERVATION RESERVE AREA

PROJECT TITLE:
BANGOR, CA

SCALE:
1"=800'

APPENDIX:
A–1



## LEGEND

⬚⬚⬚ CONSERVATION RESERVE

— ·· — ·· — PROPERTY BOUNDARY

APN
028-430-018-000

APN
028-430-017-000

APN
028-270-004-000

APN
028-270-007-000

APN
028-270-005-000

N

GRAPHIC SCALE
0    500    1000
SCALE IN FEET

SITE FEATURES ARE APPROXIMATE: NOT A PRODUCT OF SURVEY.
SOURCE OF BASE MAP: GOOGLE EARTH PROFESSIONAL IMAGE ©2020

## SCS ENGINEERS
### ENVIRONMENTAL CONSULTANTS
3843 BROCKWAY BOULEVARD  SUITE 208
SANTA ROSA, CALIFORNIA
PH. (707) 546–9461    FAX. (707) 544–5789

| PROJ. NO.: 01216337.00 | DWN. BY: AAS | ACAD FILE: LaPlant_Banfor |
| DATE: 10/12/2020 | CHK. BY: PAW | APP. BY: PAW |

SHEET TITLE:
CONSERVATION RESERVE AREA

PROJECT TITLE:
BANGOR, CA

SCALE:
1"=1000'

APPENDIX:
A–2

# APPENDIX B



# LEGEND

- CONSERVATION RESERVE
- CREEK
- PROPERTY BOUNDARY
- INTERMITTENT DRAINAGE/SWALE
- EXISTING FARM ROAD
- UNDERGROUND IRRIGATION PIPE ALIGNMENT
- PROPOSED ROAD EASEMENT
- OVERHEAD POWER LINE

N

GRAPHIC SCALE
0    400    800
SCALE IN FEET

NOTE:
PIPELINE WILL BE BACKFILLED WITH CLAY BLOCKS TO PREVENT THE CREATION OF A FRENCH DRAIN AT ALL CROSSINGS OF WETLANDS AND WATERS.

APN: 063-170-027

APN: 063-170-025

TRUCKEE CREEK

APN: 063-170-028

PIPE CROSSING WILL BE ABOVE GROUND, ELEVATED ABOVE THIS AREA (1-3 FEET)

PIPE CROSSING WILL BE ABOVE GROUND, ELEVATED ABOVE THESE AREAS (1-3 FEET)

PIPE 48" BENEATH ROADWAY (PIPE DIA. MAX IS 16")

APN: 063-170-021

PIPE CROSSING WILL BE ABOVE GROUND, ELEVATED ABOVE THE CREEK ( 3-10 FEET)

PIPE CROSSING WILL BE ABOVE GROUND, ELEVATED ABOVE THE CREEK ( 3-10 FEET)

APN: 063-170-026

TRUCKEE CREEK

RAWSON ROAD

POWER LINE EASEMENT

100'X100' PUMP STATION EASEMENT

PIPELINE/ ROADWAY WILL BE ELEVATED ABOVE DRAINAGE/SWALE THROUGH THE CROSSING/ VERNAL POOL DELINEATED AREA

APN: 063-170-006

APN: 063-170-031

SITE FEATURES ARE APPROXIMATE: NOT A PRODUCT OF SURVEY.
SOURCE OF BASE MAP: GOOGLE EARTH PROFESSIONAL IMAGE ©2020

# SCS ENGINEERS
ENVIRONMENTAL CONSULTANTS
3843 BROCKWAY BOULEVARD  SUITE 208
SANTA ROSA, CALIFORNIA
PH. (707) 546-9461   FAX. (707) 544-5789

| PROJ. NO. | 01216337.00 | DWN. BY: | AAS | ACAD FILE: | LaPlant_Red Bluff |
| DATE: | 11/23/2020 | CHK. BY: | | APP. BY: | PAW |
| | | | PAW | | |

SHEET TITLE:
PROPOSED IRRIGATION SYSTEM

PROJECT TITLE:
APN: 063-170-026
RAWSON ROAD,
RED BLUFF, CA

SCALE:
1"=800'

APPENDIX:
B

# APPENDIX C



LEGEND

| | |
|---|---|
| ▨ | CONSERVATION RESERVE |
| ▬ | CREEK |
| ▬·▬ | PROPERTY BOUNDARY |
| ▬·▬ | INTERMITTENT DRAINAGE/SWALE |

APN: 063-170-027

APN: 063-170-025

TRUCKEE CREEK

APN: 063-170-028

RAWSON ROAD

TRUCKEE CREEK

APN: 063-170-026

APN: 063-170-006

APN: 063-170-031

N

GRAPHIC SCALE
0    400    800
SCALE IN FEET

SITE FEATURES ARE APPROXIMATE; NOT A PRODUCT OF SURVEY.
SOURCE OF BASE MAP: GOOGLE EARTH PROFESSIONAL IMAGE @2020

**SCS ENGINEERS**
ENVIRONMENTAL CONSULTANTS
3843 BRICKWAY BOULEVARD  SUITE 208
SANTA ROSA, CALIFORNIA
PH. (707) 546-9461   FAX. (707) 544-5769

| PROJ. NO. | 01216337.00 | DWN. BY: | AAS | ACAD FILE: | LaPlant_Red Bluff |
| DATE: | 10/12/2020 | CHK. BY: | PAW | APP. BY: | PAW |

SHEET TITLE:
CONSERVATION RESERVE AREA

PROJECT TITLE:
APN: 063-170-026
RAWSON ROAD,
RED BLUFF, CA

SCALE:
1"=800'

APPENDIX:
C

**Exhibit "A"**
**Legal Description of Rawson Road Conservation Reserve**

All that certain real property situate in the County of Tehama, State of California described as follows:

A portion of Southwest quarter of Section 17 and the South half of Section 18, Township 25 North, Range 3 West, Mount Diablo Meridian lying in the unincorporated territory of Tehama County, State of California, according to the Record of Survey recorded on December 14, 1993 in the office of the Recorder of the County of Tehama, State of California, in Book X of Maps, page 133, more particularly described as follows:

BEGINNING at the southeast corner of said Section 18;

THENCE North 0˚38'44" West, along the west line of said Section 18, a distance of 1,948.45 feet;

THENCE leaving said west line, North 87˚58'22" East, a distance of 333.46 feet;

THENCE South 60˚56'51" East, a distance of 200.21 feet;

THENCE South 12˚45'19" East, a distance of 332.96 feet;

THENCE South 48˚39'12" East, a distance of 626.74 feet;

THENCE North 66˚53'37" East, a distance of 134.89 feet;

THENCE South 86˚32'03" East, a distance of 160.78 feet;

THENCE South 67˚10'35" East, a distance of 141.79 feet;

THENCE South 80˚51'05" East, a distance of 243.29 feet;

THENCE South 85˚21'28" East, a distance of 182.49 feet;

THENCE South 69˚32'27" East, a distance of 246.86 feet;

THENCE South 62˚00'24" East, a distance of 173.23 feet;

THENCE South 53˚31'22" East, a distance of 459.79 feet;

THENCE North 67˚10'55" East, a distance of 291.17 feet;

THENCE North 63˚27'04" East, a distance of 302.91 feet;

THENCE North 56˚27'48" East, a distance of 545.56 feet;

THENCE North 24˚03'00" East, a distance of 146.76 feet;

THENCE North 20˚27'03" East, a distance of 110.71 feet;

THENCE North 17˚16'56" West, a distance of 75.97 feet;

THENCE North 63˚08'14" West, a distance of 88.60 feet;

THENCE North 47˚25'12" West, a distance of 286.76 feet;

THENCE North 43˚06'57" West, a distance of 496.47 feet;

THENCE North 53˚44'31" West, a distance of 208.88 feet;

THENCE North 76˚08'18" West, a distance of 257.29 feet;

THENCE North 68˚47'04" West, a distance of 199.97 feet;

THENCE North 54˚00'01" West, a distance of 306.60 feet;

THENCE North 34˚03'26" West, a distance of 175.47 feet;

THENCE North 79˚03'07" West, a distance of 346.90 feet, to the north line of said south half of Section 18;

THENCE North 87˚14'42" East, along said north line, a distance of 1,279.11 feet;

THENCE leaving said north line, South 14˚03'14" East, a distance of 292.44 feet;

THENCE South 48˚50'02" East, a distance of 1,017.93 feet;

THENCE South 44˚08'28" East, a distance of 382.04 feet;

THENCE North 84˚53'25" East, a distance of 142.79 feet;

THENCE North 39˚19'34" East, a distance of 139.29 feet;

THENCE North 69˚07'59" East, a distance of 87.35 feet;

THENCE South 84˚44'51" East, a distance of 351.93 feet;

THENCE South 82˚48'42" East, a distance of 712.95 feet;

THENCE South 44˚27'28" East, a distance of 117.34 feet;

THENCE South 56˚48'20" East, a distance of 132.17 feet;

THENCE South 76˚52'16" East, a distance of 304.16 feet;

THENCE South 83˚44'23" East, a distance of 315.52 feet;

THENCE South 75˚48'41" East, a distance of 91.44 feet;

THENCE South 59˚57'17" East, a distance of 91.44 feet;

THENCE South 52˚01'35" East, a distance of 167.02 feet;

THENCE South 61˚19'08" East, a distance of 70.59 feet;

THENCE South 79˚54'14" East, a distance of 70.59 feet;

THENCE South 89˚11'47" East, a distance of 155.98 feet;

THENCE North 12˚12'45" East, a distance of 151.23 feet;

THENCE North 50˚57'44" West, a distance of 360.61 feet;

THENCE North 39˚32'40" West, a distance of 316.42 feet;

THENCE North 22˚47'50" West, a distance of 705.43 feet;

THENCE North 09˚18'32" West, a distance of 436.34 feet, to the north line of said southwest quarter of Section 17;

THENCE South 84˚50'40" East, along said north line, a distance of 2,071.78 feet, to the west right-of-way line of Rawson Road;

THENCE leaving said north line, South 01˚44'22" West, along said west right-of-way line, a distance of 2,589.57 feet, to the south line of said southwest quarter of Section 17;

THENCE leaving said west right-of-way line, North 85˚30'49" West, along said south line, a distance of 2,018.83 feet;

THENCE leaving said south line, North 00˚15'49" West, a distance of 98.73 feet;

THENCE North 12˚25'56" East, a distance of 81.90 feet;

THENCE North 18˚24'51" East, a distance of 121.33 feet;

THENCE North 00˚34'54" West, a distance of 103.99 feet;

THENCE North 16˚09'57" West, a distance of 154.04 feet;

THENCE North 47˚20'04" West, a distance of 154.04 feet;

THENCE North 62˚55'07" West, a distance of 139.14 feet;

THENCE North 54˚57'29" West, a distance of 283.61 feet;

THENCE North 69˚59'00" West, a distance of 243.48 feet;

THENCE North 86˚07'32" West, a distance of 242.18 feet;

THENCE North 73˚59'43" West, a distance of 273.92 feet;

THENCE South 82˚48'31" West, a distance of 207.84 feet;

THENCE South 72˚42'45" West, a distance of 215.24 feet;

THENCE South 66˚43'49" West, a distance of 310.87 feet;

THENCE South 74˚03'21" West, a distance of 305.03 feet;

THENCE South 48˚28'01" West, a distance of 237.06 feet;

THENCE South 52˚53'16" West, a distance of 378.41 feet;

THENCE South 60˚02'35" West, a distance of 324.79 feet;

THENCE South 62˚55'33" West, a distance of 571.94 feet, to the south line of said south half of Section 18;

THENCE South 86°59'52" West, along said south line, a distance of 2,641.34 feet to the POINT OF BEGINNING;

The above-described conservation reserve is based on record data shown on the aforementioned Record of Survey and does not represent a field survey, said property contains 243.32 acres, more or less and is a portion of Assessor's Parcel Numbers 063-170-002, 063-170-026 and 063-170-028.

This legal description does not include all easements of record on or affecting said lots or parcels.

Basis of bearing of this description is that certain map entitled, "Record of Survey for Eugene Gabrych & Marian Gabrych, et al." recorded in Book X of Maps, page 133.

Keith L. Doglio
PLS 8834

Date: _____12-22-20_____



SCALE 1" = 1000'

P.O.B.

A.P.N. 063-170-002

A.P.N. 063-170-028

A.P.N. 063-170-026

SEE DETAIL A
SHEET 2 OF 3

SEE DETAIL B
SHEET 2 OF 3

SEE DETAIL C
SHEET 2 OF 3

RAWSON ROAD

**LEGEND**

| | |
|---|---|
| ———— | PROPERTY LINE |
| | CONSERVATION RESERVE (243.32 AC.) |
| P.O.B. | POINT OF BEGINNING |
| 19 18 ◆ 20 17 | SECTION CORNER |

LICENSED LAND SURVEYOR
KEITH L. DOGLIO
No. 8834
State of California

12-22-20

Kuth Doglio

E X H I B I T  "B"

RAWSON ROAD
CONSERVATION RESERVE

RAR
ROLLS ANDERSON & ROLLS
CIVIL ENGINEERS
115 YELLOWSTONE DRIVE   CHICO, CALIFORNIA  95973-5811

NOVEMBER, 2020        20177        SHEET 1 OF 3

S:\CIVIL_3D_2018 PROJECTS\20177 Lopant\20177 Lopant.dwg 12/22/20 7:42:40 AM





**DETAIL "A"**
SCALE 1" = 400'



**DETAIL "B"**
SCALE 1" = 400'



**DETAIL "C"**
SCALE 1" = 400'

E X H I B I T  "B"

RAWSON ROAD
CONSERVATION RESERVE



*R A R*
ROLLS ANDERSON & ROLLS
CIVIL ENGINEERS
115 YELLOWSTONE DRIVE   CHICO, CALIFORNIA   95973-5811

NOVEMBER, 2020          20177          SHEET 2 OF 3

# LINE DATA

| Line | Bearing | Distance |
|---|---|---|
| 1 | N 00°38'44" W | 1948.45' |
| 2 | N 87°58'22" E | 333.46' |
| 3 | S 60°56'51" E | 200.21' |
| 4 | S 12°45'19" E | 332.96' |
| 5 | S 48°39'12" E | 626.74' |
| 6 | N 66°53'37" E | 134.89' |
| 7 | S 86°32'03" E | 160.78' |
| 8 | S 67°10'35" E | 141.79' |
| 9 | S 80°51'05" E | 243.29' |
| 10 | S 85°21'28" E | 182.49' |
| 11 | S 69°32'27" E | 246.86' |
| 12 | S 62°00'24" E | 173.23' |
| 13 | S 53°31'22" E | 459.79' |
| 14 | N 67°10'55" E | 291.17' |
| 15 | S 63°27'04" E | 302.91' |
| 16 | S 56°27'48" E | 545.56' |
| 17 | N 24°03'00" E | 146.76' |
| 18 | N 20°27'03" E | 110.71' |
| 19 | N 17°16'56" W | 75.97' |
| 20 | N 63°08'14" W | 88.60' |
| 21 | N 47°25'12" W | 286.76' |
| 22 | N 43°06'57" W | 496.47' |
| 23 | N 53°44'31" W | 208.88' |
| 24 | N 76°08'18" W | 257.29' |
| 25 | N 68°47'04" W | 199.97' |
| 26 | N 54°00'01" W | 306.60' |
| 27 | N 34°03'26" W | 175.47' |
| 28 | N 79°03'07" W | 346.90' |
| 29 | N 87°14'42" E | 1279.11' |
| 30 | S 14°03'14" E | 292.44' |
| 31 | S 48°50'02" E | 1017.93' |
| 32 | S 44°08'28" E | 382.04' |
| 33 | S 84°53'25" E | 142.79' |
| 34 | N 39°19'34" E | 139.29' |
| 35 | N 69°07'59" E | 87.35' |
| 36 | S 84°44'51" E | 351.93' |
| 37 | S 82°48'42" E | 712.95' |
| 38 | S 44°27'28" E | 117.34' |
| 39 | S 56°48'20" E | 132.17' |
| 40 | S 76°52'16" E | 304.16' |
| 41 | S 83°44'23" E | 315.52' |
| 42 | S 75°48'41" E | 91.44' |
| 43 | S 59°57'17" E | 91.44' |
| 44 | S 52°01'35" E | 167.02' |
| 45 | S 61°19'08" E | 70.59' |
| 46 | S 79°54'14" E | 70.59' |
| 47 | S 89°11'47" E | 155.98' |
| 48 | N 12°12'45" E | 151.23' |
| 49 | N 50°57'44" W | 360.61' |
| 50 | N 39°32'40" W | 316.42' |
| 51 | N 22°47'50" W | 705.43' |
| 52 | N 09°18'32" W | 436.34' |
| 53 | S 84°50'40" E | 2071.78' |
| 54 | S 01°44'22" W | 2589.57' |
| 55 | N 85°30'49" W | 2018.83' |
| 56 | N 00°15'49" W | 98.73' |
| 57 | N 12°25'56" E | 81.90' |
| 58 | N 18°24'51" E | 121.33' |
| 59 | N 00°34'54" E | 103.99' |
| 60 | N 16°09'57" W | 154.04' |
| 61 | N 47°20'04" W | 154.04' |
| 62 | N 62°55'07" W | 139.14' |
| 63 | N 54°57'29" W | 283.61' |
| 64 | N 69°59'00" W | 243.48' |
| 65 | N 86°07'32" W | 242.18' |
| 66 | N 73°59'43" W | 273.92' |
| 67 | S 82°48'31" W | 207.84' |
| 68 | S 72°42'45" W | 215.24' |
| 69 | S 66°43'49" W | 310.87' |
| 70 | S 74°03'21" W | 305.03' |
| 71 | S 48°28'01" W | 237.06' |
| 72 | S 52°53'16" W | 378.41' |
| 73 | S 60°02'35" W | 324.79' |
| 74 | S 62°55'33" W | 571.94' |
| 75 | S 86°59'52" W | 2641.34' |

EXHIBIT "B"

## RAWSON ROAD
## CONSERVATION RESERVE



*R A R*
ROLLS ANDERSON & ROLLS
CIVIL ENGINEERS
115 YELLOWSTONE DRIVE   CHICO, CALIFORNIA  95973-5811

NOVEMBER, 2020          20177          SHEET 3 OF 3

# APPENDIX D

WHEN RECORDED RETURN TO:

_____

Attention: _____

_____

_____


THIS SPACE FOR RECORDER'S USE ONLY


## DECLARATION OF RESTRICTIONS

THIS DECLARATION OF RESTRICTIONS is made as of _____, 20__, by Roger J. LaPant, Jr. ("Declarant").

WHEREAS, Declarant is the sole owner in fee simple of certain California real property parcels (the "Parcels") described in **Exhibit "A"** as the "Rawson Road Conservation Reserve," consisting of approximately 243.32 acres located in Tehama County, which is further identified in the map attached hereto **Exhibit "B"**; and

WHEREAS, Declarant agrees to the restrictions set forth herein as pertaining to the Parcels for the purpose of preserving the natural state of the Rawson Road Conservation Reserve ("Reserve"); and

NOW THEREFORE, Declarant declares as follows:

1. <u>Covenant Running with Land</u>.  In consideration of benefits flowing to the Declarant in the "Consent Decree and Settlement Agreement" dated [FILL IN] in United States District Court, Eastern District of California, Case No. 2:16-cv-01498-KJM-DB, and other valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Declarant does hereby covenant and agree to restrict, and does by this instrument intend to restrict, the future use of the Reserve in perpetuity as set forth below, by the establishment of this Covenant running with the land.

2. <u>Restrictions Concerning the Reserve</u>.  No person or entity shall engage in any of the following restricted activities in the Reserve:

> (a) No disturbance of the Reserve by dredging, filling, land clearing, tillage, farming activities (including the preparation, maintenance, or operation of areas for the production of crops or trees), construction work, earthmoving activities, or any pollutant discharge within the Reserve or any portion of such area shall be done or permitted.

> (b) No discharge, dumping, disposal, storage or placement of any trash, refuse, rubbish, or other waste materials within the Reserve or any portion of such area shall be done or permitted.

> (c) No non-waste materials shall be stored or placed (whether temporarily or permanently) within the Reserve or any portion of such area without prior written approval by the United States of America, through the U.S. Department of Justice or the U.S. Army Corps of Engineers ("United States").

(d) No activity that is incompatible with maintenance of the Reserve in its natural state shall be done or permitted.

3. <u>Specific Exceptions to the Restrictions Concerning the Reserves</u>. Declarant is not prohibited from using the Reserve for lawful hunting activities and moderate non-irrigated cattle grazing and the following associated activities: above-ground, non-toxic measures to control for weeds, pests, and invasive species; cattle corrals, for loading and unloading cattle outside of aquatic areas; use of gates, fencing, and earthen farm roads that currently exist in the Rawson Road Conservation Reserve; and construction of a firebreak, if required by State or County government or by insurance carrier, outside of aquatic areas. Declarant may use the Reserve for additional activities associated with and necessary to conduct moderate non-irrigated cattle grazing (such as installation and/or maintenance of T-posts or similar fencing, installation of above-ground water sources, and placement of additional earthen access roads for ingress and egress to/from cattle corrals), subject to conditions specified in the "Consent Decree and Settlement Agreement". Declarant may install an irrigation pipeline system through activities consistent with, and in the locations as shown in, the "Consent Decree and Settlement Agreement". Declarant is not prohibited from conducting other minimally intrusive maintenance and repairs of the roads, pipeline, and other supporting infrastructure for the irrigation system, necessary major maintenance and repairs of the roads, pipeline, and other supporting infrastructure for the irrigation system, subject to conditions specified in the "Consent Decree and Settlement Agreement". Declarant is not prohibited from establishing overhead power access for the pump station within the Reserve, subject to conditions specified in the "Consent Decree and Settlement Agreement".

4. <u>Enforcement</u>

(a)  This Declaration is intended to ensure continued compliance with paragraph 19.a. of the "Consent Decree and Settlement Agreement" and, therefore, may be enforced by the United States.

(b)  If the United States determines there is a violation of the terms of this Declaration, written notice of such violation and demand for corrective action sufficient to cure the violation shall be given to the Declarant (or, as applicable, and if known to the United States, Declarant's representatives, successors or assigns). In any instance, measures to cure the violation shall be reviewed and approved by the Corps. If a violation is not cured within 30 days after the receipt of written notice and demand, or if the cure reasonably requires more than 30 days to complete and there is failure to begin the cure with the 30-day period or failure to continue diligently to complete the cure, the United States may bring an action at law or in equity in a court of competent jurisdiction to enforce compliance with the terms of this Declaration, to recover any damages to which the United States may be entitled for violation of the terms of this Declaration or for any injury of the conservation value of the Reserve, or for other equitable relief, including but not limited to, the restoration of the Reserve to the condition in which it existed prior to any violation or injury. Without limiting the violator's liability therefore, any damages recovered may be applied to the cost of undertaking any corrective action on the Reserve to the extent allowable by law.

(c)  The United States shall have the right to enforce each of the terms of this Declaration. If the United States determines, in its sole discretion, that circumstances require immediate action to prevent or mitigate significant damage to the conservation value of the Reserve, the United States may pursue its remedies under this section without prior notice or without waiting for the period provided for cure to expire to enjoin the violation, ex parte as

necessary, by temporary or permanent injunction without the necessity of providing either actual damages or the inadequacy of otherwise available legal remedies, and to require the restoration of the Reserve to the condition that existed prior to any such injury. The remedies described herein shall be cumulative and shall be in addition to all remedies existing at law or equity, including but not limited to, the remedies set forth in California Civil Code § 815, *et seq.*; inclusive.

(d)  The United States reserves all rights and remedies in asserting violations and its demand for penalties. Declarant, his successors and assigns reserve all rights, remedies, and defenses to such claims and demands.

(e)  Enforcement of the terms of this Declaration shall be at the discretion of the United States and any forbearance to exercise rights of enforcement under this Declaration in the event of any breach of any term of this Declaration shall not be deemed or construed to be a waiver of such term or of any subsequent breach of the same or any other term of this Declaration or of any rights under this Declaration. No delay or omission in the exercise of any right or remedy upon any breach shall impair such right or remedy or be construed as a waiver.

(f)  Nothing contained in this Declaration shall be construed to entitle the United States to bring any action for any injury to or change in the Reserve resulting from causes beyond Declarant's, his successors or assigns control, including, without limitation, fire not caused by Declarant, flood, storm, and earthquake, or from any prudent action taken by the Declarant under emergency conditions to prevent, abate, or mitigate significant injury to the Reserve resulting from such causes.

5.  Not An Offer to Dedicate: No Rights of Public Use.  The provisions of this Declaration of Restrictions do not constitute an offer for public use.  This instrument does not constitute an irrevocable offer to dedicate.

6.  Successors/Assigns Bound and Land Transfer Restrictions.

(a) Declarant hereby agrees and acknowledges that the Reserve shall be held, sold, conveyed, owned and used subject to the applicable terms, conditions, and obligations imposed by this Declaration relating to the use, repair, maintenance, and/or improvement of the Reserve, and matters incidental thereto. Such terms, conditions and obligations are a burden and restriction on the use of the Reserve, as applicable.

(b) The provisions of this Declaration shall (subject to the limitations contained in this Declaration and without modifying the provisions of this Declaration) be enforceable as equitable servitudes and conditions, restrictions and covenants running with the land, and shall be binding on the Declarant and upon each and all of its respective heirs, devisees, successors, and assigns, officers, directors, employees, agents, representatives, executors, trustees, successor trustees, beneficiaries and administrators, and upon future owners of the Reserve and each of them.

(c) No transfer of ownership or control of (or transfer of any less-than-fee-simple interest in) the Reserve, any portion of the Reserve, or any portion of the parcel of which the Reserve is a part, shall relieve Declarant of any of his obligations in this Declaration.  As a condition of any such transfer, Declarant shall reserve all rights necessary for him to comply with this Declaration.  At the time of such transfer, Declarant shall provide a copy of this Declaration to the transferee, shall obtain the transferee's acknowledgement thereof, and shall provide written notice of the transfer and a copy of such acknowledgement to the United States.  If disputes arise, Declarant shall refrain from attempting to transfer or transferring the property until after the completion of any judicial review (or other binding resolution of the dispute).

7. <u>Right of Entry</u>. The United States, including its contractors and/or consultants, shall have the right of entry to the Reserve at reasonable times with reasonable advance written notice for the purpose of determining compliance with the terms of this Declaration, including (a) assessing aquatic areas and upland buffers; (b) verifying any data or information submitted by or on behalf of Declarant; and (c) obtaining evidence (*e.g.*, photographs and soil samples with hand augers). If the United States wishes its access to last for more than two consecutive days, or if the United States wishes to use mechanized equipment (rather than just hand augers) during its access, the United States must seek and obtain either Declarant's written consent or, if contested, a court order with a showing of good cause. Nothing in this Declaration is intended to alter otherwise governing law of premises liability. Nothing in this Declaration shall impair or limit any other authority the United States may otherwise have to enter and inspect the Reserve.

8. <u>Taxes/No Liens</u>.  Declarant shall pay before delinquency all taxes, assessments, fees, and charges of whatever description levied on or assessed against the Reserve by competent authority (collectively, "taxes"), including any taxes imposed upon, or incurred as a result of, this Declaration, and shall furnish the United States with satisfactory evidence of payment upon request. Declarant shall keep the Reserve free from any liens, including those arising out of any obligations incurred by the Declarant for any labor or materials furnished or alleged to have been furnished at or for use on the Reserve.

9. <u>Severability</u>.  If a court of competent jurisdiction voids or invalidates, on its face, any provision of this Declaration, such action shall not affect any of the other provisions which shall remain in full force and effect.

DECLARANT:

_____

Date: _____

By: _____

Its _____

STATE OF CALIFORNIA

County of _____

On _____, before me, _____,
              Date                      Name and Title of Officer (e.g., "Jane Doe, Notary Public")

Personally appeared _____,
                                        Name(s) of Signer(s)

____ personally known to me
____ proved to me on the basis of satisfactory evidence
      to be the person(s) whose name(s) is/are
      subscribed to the within instrument and

acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Place Notary Seal Above                    Signature of Notary Public

**EXHIBIT A – LEGAL DESCRIPTION OF "RAWSON ROAD CONSERVATION RESERVE"**

**Exhibit "A"**
**Legal Description of Rawson Road Conservation Reserve**

All that certain real property situate in the County of Tehama, State of California described as follows:

A portion of Southwest quarter of Section 17 and the South half of Section 18, Township 25 North, Range 3 West, Mount Diablo Meridian lying in the unincorporated territory of Tehama County, State of California, according to the Record of Survey recorded on December 14, 1993 in the office of the Recorder of the County of Tehama, State of California, in Book X of Maps, page 133, more particularly described as follows:

BEGINNING at the southeast corner of said Section 18;

THENCE North 0˚38'44" West, along the west line of said Section 18, a distance of 1,948.45 feet;

THENCE leaving said west line, North 87˚58'22" East, a distance of 333.46 feet;

THENCE South 60˚56'51" East, a distance of 200.21 feet;

THENCE South 12˚45'19" East, a distance of 332.96 feet;

THENCE South 48˚39'12" East, a distance of 626.74 feet;

THENCE North 66˚53'37" East, a distance of 134.89 feet;

THENCE South 86˚32'03" East, a distance of 160.78 feet;

THENCE South 67˚10'35" East, a distance of 141.79 feet;

THENCE South 80˚51'05" East, a distance of 243.29 feet;

THENCE South 85˚21'28" East, a distance of 182.49 feet;

THENCE South 69˚32'27" East, a distance of 246.86 feet;

THENCE South 62˚00'24" East, a distance of 173.23 feet;

THENCE South 53˚31'22" East, a distance of 459.79 feet;

THENCE North 67˚10'55" East, a distance of 291.17 feet;

THENCE North 63˚27'04" East, a distance of 302.91 feet;

THENCE North 56˚27'48" East, a distance of 545.56 feet;

THENCE North 24˚03'00" East, a distance of 146.76 feet;

THENCE North 20˚27'03" East, a distance of 110.71 feet;

THENCE North 17˚16'56" West, a distance of 75.97 feet;

THENCE North 63˚08'14" West, a distance of 88.60 feet;

THENCE North 47˚25'12" West, a distance of 286.76 feet;

THENCE North 43˚06'57" West, a distance of 496.47 feet;

THENCE North 53˚44'31" West, a distance of 208.88 feet;

THENCE North 76˚08'18" West, a distance of 257.29 feet;

THENCE North 68˚47'04" West, a distance of 199.97 feet;

THENCE North 54˚00'01" West, a distance of 306.60 feet;

THENCE North 34˚03'26" West, a distance of 175.47 feet;

THENCE North 79˚03'07" West, a distance of 346.90 feet, to the north line of said south half of Section 18;

THENCE North 87˚14'42" East, along said north line, a distance of 1,279.11 feet;

THENCE leaving said north line, South 14˚03'14" East, a distance of 292.44 feet;

THENCE South 48˚50'02" East, a distance of 1,017.93 feet;

THENCE South 44˚08'28" East, a distance of 382.04 feet;

THENCE North 84˚53'25" East, a distance of 142.79 feet;

THENCE North 39˚19'34" East, a distance of 139.29 feet;

THENCE North 69˚07'59" East, a distance of 87.35 feet;

THENCE South 84˚44'51" East, a distance of 351.93 feet;

THENCE South 82˚48'42" East, a distance of 712.95 feet;

THENCE South 44˚27'28" East, a distance of 117.34 feet;

THENCE South 56˚48'20" East, a distance of 132.17 feet;

THENCE South 76˚52'16" East, a distance of 304.16 feet;

THENCE South 83˚44'23" East, a distance of 315.52 feet;

THENCE South 75˚48'41" East, a distance of 91.44 feet;

THENCE South 59˚57'17" East, a distance of 91.44 feet;

THENCE South 52˚01'35" East, a distance of 167.02 feet;

THENCE South 61˚19'08" East, a distance of 70.59 feet;

THENCE South 79˚54'14" East, a distance of 70.59 feet;

THENCE South 89˚11'47" East, a distance of 155.98 feet;

THENCE North 12˚12'45" East, a distance of 151.23 feet;

THENCE North 50˚57'44" West, a distance of 360.61 feet;

THENCE North 39˚32'40" West, a distance of 316.42 feet;

THENCE North 22˚47'50" West, a distance of 705.43 feet;

THENCE North 09˚18'32" West, a distance of 436.34 feet, to the north line of said southwest quarter of Section 17;

THENCE South 84˚50'40" East, along said north line, a distance of 2,071.78 feet, to the west right-of-way line of Rawson Road;

THENCE leaving said north line, South 01˚44'22" West, along said west right-of-way line, a distance of 2,589.57 feet, to the south line of said southwest quarter of Section 17;

THENCE leaving said west right-of-way line, North 85˚30'49" West, along said south line, a distance of 2,018.83 feet;

THENCE leaving said south line, North 00˚15'49" West, a distance of 98.73 feet;

THENCE North 12˚25'56" East, a distance of 81.90 feet;

THENCE North 18˚24'51" East, a distance of 121.33 feet;

THENCE North 00˚34'54" West, a distance of 103.99 feet;

THENCE North 16˚09'57" West, a distance of 154.04 feet;

THENCE North 47˚20'04" West, a distance of 154.04 feet;

THENCE North 62˚55'07" West, a distance of 139.14 feet;

THENCE North 54˚57'29" West, a distance of 283.61 feet;

THENCE North 69˚59'00" West, a distance of 243.48 feet;

THENCE North 86˚07'32" West, a distance of 242.18 feet;

THENCE North 73˚59'43" West, a distance of 273.92 feet;

THENCE South 82˚48'31" West, a distance of 207.84 feet;

THENCE South 72˚42'45" West, a distance of 215.24 feet;

THENCE South 66˚43'49" West, a distance of 310.87 feet;

THENCE South 74˚03'21" West, a distance of 305.03 feet;

THENCE South 48˚28'01" West, a distance of 237.06 feet;

THENCE South 52˚53'16" West, a distance of 378.41 feet;

THENCE South 60˚02'35" West, a distance of 324.79 feet;

THENCE South 62˚55'33" West, a distance of 571.94 feet, to the south line of said south half of Section 18;

THENCE South 86°59'52" West, along said south line, a distance of 2,641.34 feet to the POINT OF BEGINNING;

The above-described conservation reserve is based on record data shown on the aforementioned Record of Survey and does not represent a field survey, said property contains 243.32 acres, more or less and is a portion of Assessor's Parcel Numbers 063-170-002, 063-170-026 and 063-170-028.

This legal description does not include all easements of record on or affecting said lots or parcels.

Basis of bearing of this description is that certain map entitled, "Record of Survey for Eugene Gabrych & Marian Gabrych, et al." recorded in Book X of Maps, page 133.

Keith L. Doglio
PLS 8834

Date: _12-22-20_

**EXHIBIT B – MAP OF "RAWSON ROAD CONSERVATION RESERVE"**



SCALE 1" = 1000'

P.O.B.

A.P.N. 063-170-002

**LEGEND**

——————— PROPERTY LINE

CONSERVATION RESERVE
(243.32 AC.)

P.O.B. POINT OF BEGINNING

19 18
20 17 SECTION CORNER

SEE DETAIL A
SHEET 2 OF 3

A.P.N. 063-170-028

SEE DETAIL C
SHEET 2 OF 3

A.P.N. 063-170-026

SEE DETAIL B
SHEET 2 OF 3

LICENSED LAND SURVEYOR
KEITH L. DOGLIO
No. 8834
State of California

12-22-20

Keith Doglio

E X H I B I T  "B"

RAWSON ROAD
CONSERVATION RESERVE

RAR
ROLLS ANDERSON & ROLLS
CIVIL ENGINEERS
115 YELLOWSTONE DRIVE  CHICO, CALIFORNIA  95973-5811

RAWSON ROAD

NOVEMBER, 2020        20177        SHEET 1 OF 3

S:\CIVIL_30  2018  PROJECTS\20177  Lapont.dwg 12/22/20 7:42:40 AM



## DETAIL "A"
SCALE 1" = 400'



## DETAIL "B"
SCALE 1" = 400'



## DETAIL "C"
SCALE 1" = 400'

EXHIBIT "B"

RAWSON ROAD
CONSERVATION RESERVE



*RAR*
ROLLS ANDERSON & ROLLS
CIVIL ENGINEERS
115 YELLOWSTONE DRIVE   CHICO, CALIFORNIA   95973-5811

NOVEMBER, 2020          20177          SHEET 2 OF 3

# LINE DATA

| No. | Bearing | Distance | No. | Bearing | Distance | No. | Bearing | Distance |
|---|---|---|---|---|---|---|---|---|
| 1 | N 00°38'44" W | 1948.45' | 26 | N 54°00'01" W | 306.60' | 51 | N 22°47'50" W | 705.43' |
| 2 | N 87°58'22" E | 333.46' | 27 | N 34°03'26" W | 175.47' | 52 | N 09°18'32" W | 436.34' |
| 3 | S 60°56'51" E | 200.21' | 28 | N 79°03'07" W | 346.90' | 53 | S 84°50'40" E | 2071.78' |
| 4 | S 12°45'19" E | 332.96' | 29 | N 87°14'42" E | 1279.11' | 54 | S 01°44'22" W | 2589.57' |
| 5 | S 48°39'12" E | 626.74' | 30 | S 14°03'14" E | 292.44' | 55 | N 85°30'49" W | 2018.83' |
| 6 | N 66°53'37" E | 134.89' | 31 | S 48°50'02" E | 1017.93' | 56 | N 00°15'49" W | 98.73' |
| 7 | S 86°32'03" E | 160.78' | 32 | S 44°08'28" E | 382.04' | 57 | N 12°25'56" E | 81.90' |
| 8 | S 67°10'35" E | 141.79' | 33 | S 84°53'25" E | 142.79' | 58 | N 18°24'51" E | 121.33' |
| 9 | S 80°51'05" E | 243.29' | 34 | N 39°19'34" E | 139.29' | 59 | N 00°34'54" W | 103.99' |
| 10 | S 85°21'28" E | 182.49' | 35 | N 69°07'59" E | 87.35' | 60 | N 16°09'57" W | 154.04' |
| 11 | S 69°32'27" E | 246.86' | 36 | S 84°44'51" E | 351.93' | 61 | N 47°20'04" W | 154.04' |
| 12 | S 62°00'24" E | 173.23' | 37 | S 82°48'42" E | 712.95' | 62 | N 62°55'07" W | 139.14' |
| 13 | S 53°31'22" E | 459.79' | 38 | S 44°27'28" E | 117.34' | 63 | N 54°57'29" W | 283.61' |
| 14 | N 67°10'55" E | 291.17' | 39 | S 56°48'20" E | 132.17' | 64 | N 69°59'00" W | 243.48' |
| 15 | S 63°27'04" E | 302.91' | 40 | S 76°52'16" E | 304.16' | 65 | N 86°07'32" W | 242.18' |
| 16 | S 56°27'48" E | 545.56' | 41 | S 83°44'23" E | 315.52' | 66 | N 73°59'43" W | 273.92' |
| 17 | N 24°03'00" E | 146.76' | 42 | S 75°48'41" E | 91.44' | 67 | S 82°48'31" W | 207.84' |
| 18 | N 20°27'03" E | 110.71' | 43 | S 59°57'17" E | 91.44' | 68 | S 72°42'45" W | 215.24' |
| 19 | N 17°16'56" W | 75.97' | 44 | S 52°01'35" E | 167.02' | 69 | S 66°43'49" W | 310.87' |
| 20 | N 63°08'14" W | 88.60' | 45 | S 61°19'08" E | 70.59' | 70 | S 74°03'21" W | 305.03' |
| 21 | N 47°25'12" W | 286.76' | 46 | S 79°54'14" E | 70.59' | 71 | S 48°28'01" W | 237.06' |
| 22 | N 43°06'57" W | 496.47' | 47 | S 89°11'47" E | 155.98' | 72 | S 52°53'16" W | 378.41' |
| 23 | N 53°44'31" W | 208.88' | 48 | N 12°12'45" E | 151.23' | 73 | S 60°02'35" W | 324.79' |
| 24 | N 76°08'18" W | 257.29' | 49 | N 50°57'44" W | 360.61' | 74 | S 62°55'33" W | 571.94' |
| 25 | N 68°47'04" W | 199.97' | 50 | N 39°32'40" W | 316.42' | 75 | S 86°59'52" W | 2641.34' |

EXHIBIT "B"

## RAWSON ROAD
## CONSERVATION RESERVE



RAR
ROLLS ANDERSON & ROLLS
CIVIL ENGINEERS
115 YELLOWSTONE DRIVE   CHICO, CALIFORNIA  95973-5811
NOVEMBER, 2020         20177         SHEET 3 OF 3

# APPENDIX E

WHEN RECORDED RETURN TO:

_____

Attention: _____
_____
_____

THIS SPACE FOR RECORDER'S USE ONLY

## DECLARATION OF RESTRICTIONS

THIS DECLARATION OF RESTRICTIONS is made as of _____, 20___, by Roger J. LaPant, Jr. ("Declarant").

WHEREAS, Declarant is the sole owner in fee simple of certain California real property parcels (the "Parcels"), located in Butte County, State of California, a portion of which, consisting of approximately 204 acres has been designated as the "Bangor Conservation Reserve," and is further identified in the map attached hereto **Exhibit "A"**; and

WHEREAS, Declarant agrees to the restrictions set forth herein as pertaining to the Parcels for the purpose of preserving the natural state of the Bangor Conservation Reserve ("Reserve"); and

NOW THEREFORE, Declarant declares as follows:

1. Covenant Running with Land.  In consideration of benefits flowing to the Declarant in the "Consent Decree and Settlement Agreement" dated [FILL IN] in United States District Court, Eastern District of California, Case No. 2:16-cv-01498-KJM-DB, and other valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Declarant does hereby covenant and agree to restrict, and does by this instrument intend to restrict, the future use of the Reserve as set forth below, by the establishment of this Covenant running with the land, which shall expire twenty (20) years from the effective date of this Declaration of Restrictions.

2. Restrictions Concerning the Reserve.  No person or entity shall engage in any of the following restricted activities in the Reserve:

(a) No disturbance of the Reserve by dredging, filling, land clearing, tillage, farming activities (including the preparation, maintenance, or operation of areas for the production of crops or trees), construction work, earthmoving activities, or any pollutant discharge within the Reserve or any portion of such area shall be done or permitted.

(b) No discharge, dumping, disposal, storage or placement of any trash, refuse, rubbish, or other waste materials within the Reserve or any portion of such area shall be done or permitted.

(c) No non-waste materials shall be stored or placed (whether temporarily or permanently) within the Reserve or any portion of such area without prior written approval by the United States of America, through the U.S. Department of Justice or the U.S. Army Corps of Engineers ("United States").

(d) No activity that is incompatible with maintenance of the Reserve in its natural state shall be done or permitted.

3. <u>Specific Exceptions to the Restrictions Concerning the Reserves</u>. Declarant is not prohibited from using the Reserve for lawful hunting activities and moderate non-irrigated cattle grazing and the following associated activities: above-ground, non-toxic measures to control for weeds, pests, and invasive species; cattle corrals, for loading and unloading cattle outside of aquatic areas; use of gates, fencing, and earthen farm roads that currently exist in the Bangor Conservation Reserve; and construction of a firebreak, if required by State or County government or by insurance carrier, outside of aquatic areas. Declarant may use the Reserve for additional activities associated with and necessary to conduct moderate non-irrigated cattle grazing (such as installation and/or maintenance of T-posts or similar fencing, installation of above-ground water sources, and placement of additional earthen access roads for ingress and egress to/from cattle corrals), subject to conditions specified in the "Consent Decree and Settlement Agreement".

4. <u>Enforcement</u>

(a) This Declaration is intended to ensure continued compliance with paragraph 19.b. of the "Consent Decree and Settlement Agreement" and, therefore, may be enforced by the United States.

(b) If the United States determines there is a violation of the terms of this Declaration, written notice of such violation and demand for corrective action sufficient to cure the violation shall be given to the Declarant (or, as applicable, and if known to the United States Declarant's representatives, successors or assigns). In any instance, measures to cure the violation shall be reviewed and approved by the Corps. If a violation is not cured within 30 days after the receipt of written notice and demand, or if the cure reasonably requires more than 30 days to complete and there is failure to begin the cure with the 30-day period or failure to continue diligently to complete the cure, United States may bring an action at law or in equity in a court of competent jurisdiction to enforce compliance with the terms of this Declaration, to recover any damages to which the United States may be entitled for violation of the terms of this Declaration or for any injury of the conservation value of the Reserve, or for other equitable relief, including but not limited to, the restoration of the Reserve to the condition in which it existed prior to any violation or injury. Without limiting the violator's liability therefore, any damages recovered may be applied to the cost of undertaking any corrective action on the Reserve to the extent allowable by law.

(c) The United States shall have the right to enforce each of the terms of this Declaration. If the United States determines, in its sole discretion, that circumstances require immediate action to prevent or mitigate significant damage to the conservation value of the Reserve, the United States may pursue its remedies under this section without prior notice or without waiting for the period provided for cure to expire to enjoin the violation, ex parte as necessary, by temporary or permanent injunction without the necessity of providing either actual damages or the inadequacy of otherwise available legal remedies, and to require the restoration of the Reserve to the condition that existed prior to any such injury. The remedies described herein shall be cumulative and shall be in addition to all remedies existing at law or equity, including but not limited to, the remedies set forth in California Civil Code § 815, *et seq.*; inclusive.

(d)  The United States reserves all rights and remedies in asserting violations and its demand for penalties. Declarant, his successors and assigns reserve all rights, remedies, and defenses to such claims and demands.

(e)  Enforcement of the terms of this Declaration shall be at the discretion of the United States and any forbearance to exercise rights of enforcement under this Declaration in the event of any breach of any term of this Declaration shall not be deemed or construed to be a waiver of such term or of any subsequent breach of the same or any other term of this Declaration or of any rights under this Declaration. No delay or omission in the exercise of any right or remedy upon any breach shall impair such right or remedy or be construed as a waiver.

(f)  Nothing contained in this Declaration shall be construed to entitle the United States to bring any action for any injury to or change in the Reserve resulting from causes beyond Declarant's, his successors' or assigns' control, including, without limitation, fire not caused by Declarant, flood, storm, and earthquake, or from any prudent action taken by the Declarant under emergency conditions to prevent, abate, or mitigate significant injury to the Reserve resulting from such causes.

5.  Not An Offer to Dedicate: No Rights of Public Use.  The provisions of this Declaration of Restrictions do not constitute an offer for public use.  This instrument does not constitute an irrevocable offer to dedicate.

6.  Successors/Assigns Bound and Land Transfer Restrictions.

(a) Declarant hereby agrees and acknowledges that the Reserve shall be held, sold, conveyed, owned and used subject to the applicable terms, conditions, and obligations imposed by this Declaration relating to the use, repair, maintenance, and/or improvement of the Reserve, and matters incidental thereto. Such terms, conditions and obligations are a burden and restriction on the use of the Reserve, as applicable.

(b) The provisions of this Declaration shall (subject to the limitations contained in this Declaration and without modifying the provisions of this Declaration) be enforceable as equitable servitudes and conditions, restrictions and covenants running with the land, and shall be binding on the Declarant and upon each and all of its respective heirs, devisees, successors, and assigns, officers, directors, employees, agents, representatives, executors, trustees, successor trustees, beneficiaries and administrators, and upon future owners of the Reserve and each of them.

(c) No transfer of ownership or control of (or transfer of any less-than-fee-simple interest in) the Reserve, any portion of the Reserve, or any portion of the parcel of which the Reserve is a part, shall relieve Declarant of any of his obligations in this Declaration.  As a condition of any such transfer, Declarant shall reserve all rights necessary for him to comply with this Declaration.  At the time of such transfer, Declarant shall provide a copy of this Declaration to the transferee, shall obtain the transferee's acknowledgement thereof, and shall provide written notice of the transfer and a copy of such acknowledgement to the United States.  If disputes arise, Declarant shall refrain from attempting to transfer or transferring the property until after the completion of any judicial review (or other binding resolution of the dispute).

7.  Right of Entry. The United States, including its  contractors and/or consultants, shall have the right of entry to the Reserve at reasonable times with reasonable advance written notice for the purpose of determining compliance with the terms of this Declaration, including (a) assessing aquatic areas and upland buffers; (b) verifying any data or information submitted by or on behalf of Declarant; and (c) obtaining evidence (*e.g.*, photographs and soil samples with hand augers). If the United States wishes its access to last for more than two consecutive days, or if

the United States wishes to use mechanized equipment (rather than just hand augers) during its access, the United States must seek and obtain either Declarant's written consent or, if contested, a court order with a showing of good cause. Nothing in this Declaration is intended to alter otherwise governing law of premises liability. Nothing in this Declaration shall impair or limit any other authority the United States may otherwise have to enter and inspect the Reserve.

8. <u>Taxes/No Liens</u>. Declarant shall pay before delinquency all taxes, assessments, fees, and charges of whatever description levied on or assessed against the Reserve by competent authority (collectively, "taxes"), including any taxes imposed upon, or incurred as a result of, this Declaration, and shall furnish the United States with satisfactory evidence of payment upon request. Declarant shall keep the Reserve free from any liens, including those arising out of any obligations incurred by the Declarant for any labor or materials furnished or alleged to have been furnished at or for use on the Reserve.

9. <u>Severability</u>. If a court of competent jurisdiction voids or invalidates, on its face, any provision of this Declaration, such action shall not affect any of the other provisions which shall remain in full force and effect.

DECLARANT:

_____

Date: _____

By: _____

Its _____


STATE OF CALIFORNIA

County of _____

On _____, before me, _____,
          Date                       Name and Title of Officer (e.g., "Jane Doe, Notary Public")

Personally appeared _____,
                                   Name(s) of Signer(s)

____ personally known to me
____ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Place Notary Seal Above                    Signature of Notary Public

**EXHIBIT A – MAP OF "BANGOR CONSERVATION RESERVE"**



LEGEND

⊠ CONSERVATION RESERVE

–·–·–·– PROPERTY BOUNDARY

APN
028-200-001-000

APN
028-200-001-000

APN
028-200-003-000

APN
028-200-003-000

N

GRAPHIC SCALE
0    400    800
SCALE IN FEET

SITE FEATURES ARE APPROXIMATE: NOT A PRODUCT OF SURVEY.
SOURCE OF BASE MAP: GOOGLE EARTH PROFESSIONAL IMAGE ©2020

**SCS ENGINEERS**
ENVIRONMENTAL CONSULTANTS
3843 BROCKWAY BOULEVARD  SUITE 208
SANTA ROSA, CALIFORNIA
PH. (707) 546-9461    FAX. (707) 544-5789

| PROJ. NO.: 01216337.00 | DWN. BY: AAS | ACAD FILE: LaPlant_Banfor |
| DATE: 10/12/2020 | CHK. BY: PAW | APP. BY: PAW |

SHEET TITLE:
CONSERVATION RESERVE AREA

PROJECT TITLE:
BANGOR, CA

SCALE:
1"=800'

APPENDIX:
A-1



LEGEND

⬡⬡⬡⬡ CONSERVATION RESERVE

—··—··— PROPERTY BOUNDARY

APN
028-430-018-000

APN
028-430-017-000

APN
028-270-007-000

APN
028-270-004-000

APN
028-270-005-000

N

GRAPHIC SCALE
0    500    1000
SCALE IN FEET

SITE FEATURES ARE APPROXIMATE: NOT A PRODUCT OF SURVEY.
SOURCE OF BASE MAP: GOOGLE EARTH PROFESSIONAL IMAGE ©2020

**SCS ENGINEERS**
ENVIRONMENTAL CONSULTANTS
3043 BROCKWAY BOULEVARD SUITE 208
SANTA ROSA, CALIFORNIA
PH. (707) 546–9461    FAX. (707) 544–5769

| PROJ. NO.: 01216337.00 | DWN. BY: AAS | ACAD FILE: LaPlant_Banfor |
| DATE: 10/12/2020 | CHK. BY: PAW | APP. BY: PAW |

SHEET TITLE:
CONSERVATION RESERVE AREA

PROJECT TITLE:
BANGOR, CA

SCALE:
1"=1000'

APPENDIX:
A-2

# APPENDIX F



LEGEND

CONSERVATION RESERVE
ORCHARDS AREA
WHEAT AREA
NOT PLANTED AREA
CREEK
PROPERTY BOUNDARY
INTERMITTENT DRAINAGE/SWALE

APN: 063-170-027
APN: 063-170-025
TRUCKEE CREEK
EQUIPMENT STORAGE
HOME
PUMP HOUSE—
CONTAINER—PARTS
APN: 063-170-028
RAWSON ROAD
APN: 063-170-021
APN: 063-170-026
TRUCKEE CREEK
100'x100'
PUMP STATION EASEMENT
APN: 063-170-006
APN: 063-170-031

N

GRAPHIC SCALE
0    400    800
SCALE IN FEET

SITE FEATURES ARE APPROXIMATE: NOT A PRODUCT OF SURVEY.
SOURCE OF BASE MAP: GOOGLE EARTH PROFESSIONAL IMAGE ©2020

**SCS ENGINEERS**
ENVIRONMENTAL CONSULTANTS
3843 BROCKWAY BOULEVARD SUITE 208
SANTA ROSA, CALIFORNIA
PH. (707) 546-9461    FAX. (707) 544-5769

| PROJ. NO. | 01216337.00 |
| DATE: | 10/16/2020 |
| DWN. BY: | AAS |
| CHK. BY: | PAW |
| APP. BY: | PAW |
| ACAD FILE: | LaPlant_Red Bluff |

SHEET TITLE: EXISTING FARMING OPERATIONS AND BUILDINGS

PROJECT TITLE:
APN: 063-170-026
RAWSON ROAD,
RED BLUFF, CA

SCALE:
1"=800'

APPENDIX:
F